## Greer v. Palmer

*Robert W. Beatty*, for plaintiff.
*D. Malcolm Hodge*, for defendant.

ERVIN, J., June 12, 1945.—This was a suit in trespass for personal injuries arising out of an automobile accident. A verdict of $4,500 was given to plaintiff. Defendant filed motions for judgment n. o. v. and new trial. Defendant's counsel stated that he could find no error in the admission or rejection of testimony or in the charge of the court. That leaves for disposition the sole question. Was the verdict of the jury excessive?

The medical damages proved amounted to $331.85. The plaintiff was an unmarried lady, 22 years of age at the time of the accident, which occurred on March 1, 1942, and 25 years old at the time of the trial, which occurred on May 9-10, 1945. At the time of the accident plaintiff was employed and at the present time is employed at the University of Pennsylvania accounting department. Plaintiff's face was badly lacerated and she was admitted to Delaware County Hospital as a result of the accident on March 1, 1942, and discharged March 17, 1942. Dr. Hinton, surgeon at the hospital, examined plaintiff on March 1, 1942, and found lacerated wounds of the face and on the left side of the forehead, coming down into the upper eyelid, and another wound on the right side of her cheek extending into the upper lip. There was also a compound fracture of the outer table of the frontal bone on the left side and plaintiff suffered a concussion of the brain. Plaintiff was kept in bed for a period of 17 days while in the hospital. Dr. Hinton stated that during the time plaintiff was in the hospital she suffered the pain that always accompanies a wound and that the pain was in her head over the forehead and also over her cheek and that the wound extended down to the exposed bone. On November 8, 1943, plaintiff was examined by Dr. Anthony S. Tournay, a neurologist and psychiatrist. Dr. Thomas Joseph Ryan, on the surgical staff of the Fitzgerald-Mercy Hospital, testified that plaintiff consulted him on June 10, 1942, by reason of the disfiguring

scars on her face. He described the scars at that time as follows:

"She had two large scars on the right side of her face that were quite red and swollen and one large scar over the left side of the forehead, radiating down to the left eyelid, contracting the eyelid so it was disfigured and did not close properly. The contracture of the scar running from the forehead into the eyelid prevented the eyelid from completely closing and while the eyelid was open, it was disfigured by being pulled up by the scar."

Dr. Ryan recommended that the scars be excised and resutured in order to overcome the contracture of the eyelid. In describing the scar on the forehead, he said:

"Yes. The scar in this region runs to the hair line. It runs down to this point. I think if you will notice the eyelid, this fold abruptly terminates here and this was pulling the eyelid in this fashion." (Indicating on plaintiff.)

Dr. Ryan cut out the scar on the forehead and sutured it in order to correct the abnormal condition of the eyelid. He said that the results of his operation were good. He said that plaintiff was admitted to the Misericordia Hospital on August 16th and discharged on August 21st. He said that the scars had been continuously improving since he last saw them and believed they would remain in their present condition for the future. Both Dr. Hinton and Dr. Ryan testified that they did not believe any further plastic surgery was indicated. Dr. Ryan also testified that plaintiff suffered pain while in the hospital under his care. He testified that the condition of the left eye and the contraction affected the plaintiff's sleeping and also produced a burning or itching sensation in the skin that was troublesome to her nervous system. He also testified that on March 20, 1943, he gave plaintiff a spinal

fluid examination by introducing a needle into her spine and measuring the pressure. There was testimony to show that plaintiff was a healthy, normal girl with an unmarked face and evidently of attractive personality. As a result of her injuries she has a large conspicuous scar on her right cheek three inches long and at some places a quarter of an inch wide. Some of the original redness remains, although it is possible that the scar may in the future become paler. Plaintiff also has a long scar running from the left side of her forehead and extending into her upper eyelid. This scar is about three inches long. The scar still affects the action of the eyelid and the appearance of the eyelid is not normal.

Blemishes on a woman's face authorize the recovery of substantial damages. Generally, courts are not inclined to award damages in so great an amount for a married or aged woman's facial disfigurement as for the disfigurement of a girl or young woman whose youth and occupation render beauty of greater monetary value. The amount allowable for a facial injury depends upon the seriousness of the disfigurement and the accompaning injuries to other portions of the body: 10 Blashfield's Cyclopedia of Automobile Law and Practice, Part 1, Permanent Edition, pp. 129, 130, 131.

One of the greatest assets of a young unmarried woman is her face. When her face is marred by permanent scars she undoubtedly suffers great humiliation for a long period of time. The jury in this case was made up of 12 women. They were probably better able to determine how much should be allowed to the plaintiff than is a mere man. The amount allowed her does not shock the conscience of the court. It may have been near the top amount that should be allowed for such damages but we do not feel that it exceeded a reasonable amount.