MIRIAM B. FRANCO *v.* FRANKLIN FUJIMOTO.

No. 4271.

MARCH 24, 1964.

TSUKIYAMA, C. J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY CASSIDY, J.

On February 12, 1959, the plaintiff, Miriam B. Franco, was injured in a collision occurring on Kapiolani Boulevard, in Honolulu, between an automobile driven by the defendant, Franklin Fujimoto, and one driven by Harry Y. Hirahara. Plaintiff was a passenger in the latter's car. The impact caused plaintiff's head to strike the windshield of the car with sufficient force to break it. Her face was cut by splinters of glass and she suffered shock. She was taken by ambulance to the Queen's Hospital Emergency Division where she received medication, the glass was removed from her face and eyes, and a laceration on her

forehead was sutured with several stitches. She was discharged from the hospital about three hours after entering it. She remained at home under the care of her own physician, Dr. Charlotte M. Florine, who told her on February 23, 1959, that she could go back to work, which she did the next day.

Plaintiff testified that she had not been able to sleep the night after the accident because of pain in her head, back and shoulders; that for two weeks thereafter she had pain in the shoulder area of her back and in her neck for about 10 to 14 hours each day; that the pain occurred for 30 minutes or an hour each day for the ensuing six months; and that between the end of the six-month period and the trial in June, 1961, it occurred at least two or three times a week.

The laceration on plaintiff's forehead left a scar $1\frac{1}{8}$ inches long. It varied in width from $\frac{1}{8}$ inch to about $1/32$ inch.

Loss of wages for the 12 days plaintiff was away from work was established at $107.52. Reasonable cost of medical expenses was stipulated at $56.00. The jury returned a verdict in plaintiff's favor allowing $163.52 as special damages, and $7,500.00 as general damages.

Defendant's appeal from the judgment on the verdict presents ten specifications of error. We will first consider Specifications No. 8 and No. 9, which raise an important question on the permissible scope of argument on damages in personal injury actions.

In argument to the jury plaintiff's counsel illustrated and urged the computation of damages for pain and suffering from the date of injury to the date of trial on a mathematical formula basis. Following the three-phase pattern of suffering testified to by the plaintiff, counsel, using a chart, added the hours plaintiff said she had suffered in each of the three separate periods to find a total

of 1,255 hours and multiplied by $5.00 an hour to obtain (by his computation) $7,275.00 as the suggested amount of damages for past pain and suffering. In selecting the $5.00 per hour rate counsel urged that that factor could be arrived at by considering plaintiff's rate of pay. He argued:

"Now, again, Ladies and Gentlemen, after we arrive at the number of hours, how can we convert that into money? Well, most of us have to work at so much an hour. I suggest to you that we apply the same basis."

(Objection made and overruled.)

"We now have a total of 1,255 hours for her past aches and pains and injuries and mental suffering and physical pain. I started to say before the objection was made that we are familiar with a situation like this. Most of us work for an hourly wage, or it can be converted to an hourly wage.

"The Plaintiff herself works for $2.25, I think she said. When it was time and a half, she didn't know what time and a half amounted to. She works at a job which she finds pleasing. It is pleasing enough so that she forgets about the neck ache during the time that she is working. She gets $2.25 an hour for that. What is something as unpleasant as this worth? I suggest to you it is worth at least double. And if it is worth $5.00 an hour, then for what she had had in the past, she should be getting around $7,275, plus whatever valuation you put on for the initial impact."

Plaintiff's counsel also suggested and asked for a specific lump-sum figure for the initial pain and suffering at the time of the injury and a lump-sum amount for future pain and suffering. He also resorted to the use of the mathematical formula in arguing damages attributable to future mental suffering from the scar. On this last item of damages he took plaintiff's life expectancy of

39 years, or, a total of 14,235 days, and suggested that a reasonable allowance would be at the rate of $1.00 or $2.00 per day. The portions of the argument suggesting the use of the mathematical formula to determine damages for past pain and suffering and for future mental anguish caused by the scar were made over defendant's objection. No objection was interposed to counsel's suggesting a specific lump sum for the initial pain and suffering or for a lump-sum amount for future pain and suffering.

The argument objected to clearly runs afoul of the now well-known "Botta Rule." We are thus directly faced with the necessity of taking our stand in respect to that rule for this jurisdiction. As plaintiff states, "Three avenues are available to the court: (1) accept the rule in *Botta* v. *Brunner*, 26 N.J. 82, 138 A.2d 713 (1958), (2) reject the rule in the *Botta* case, or (3) leave the matter in the discretion of the trial court."

In *Botta* the New Jersey Supreme Court held that the trial court did not commit error in refusing to permit plaintiff's counsel, in argument to the jury in a personal injury case, to suggest a mathematical formula for the computation of damages for pain and suffering. The court concluded that the mathematical or per diem formula argument constituted "an unwarranted intrusion into the domain of the jury" and was not permissible. The reasoning of the court in reaching that conclusion appears from the following excerpts from the opinion.

"For hundreds of years, the measure of damages for pain and suffering following in the wake of a personal injury has been 'fair and reasonable compensation.' This general standard was adopted because of universal acknowledgment that a more specific or definitive one is impossible. There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to

the establishment of damage awards for personal injuries. And it is equally plain that there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. A person can sell quantities of his blood, but there is no mart where the price of a voluntary subjection of oneself to pain and suffering is or can be fixed. It has never been suggested that a standard of value can be found and applied. The varieties and degrees of pain are almost infinite. Individuals differ greatly in susceptibility to pain and in capacity to withstand it. And the impossibility of recognizing or of isolating fixed levels or plateaus of suffering must be conceded. (pp. 718-719.)

    *     *     *     *     *     *     *     *

"As has been indicated, pain and suffering have no known dimensions, mathematical or financial. There is no exact correspondence between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this reason, the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation. * * * (p. 720.)

"Clearly these statements are what analysis shows them to be—suggestions of valuations or compensation factors for pain and suffering. They have no foundation in the evidence. They import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any such basis. No one has ever argued that a witness, expert or otherwise, would be competent to estimate pain on a per hour or per diem basis. * * *" (p. 723.)

There is a sharp division in the holdings of the juris-

dictions which to date have ruled on the issue. At present the number of jurisdictions which have disapproved the argument appear to be almost equal to the number which have sanctioned it. While there are many states yet to be heard from, we doubt anything can be said either for or against the use of the mathematical formula argument that has not already been advanced and thoroughly considered in the cases which have ruled on the issue since the *Botta* decision was handed down in February, 1958. Coverage of the issue has been well nigh exhausted. In consequence, our task in this case has been to consider the rationale of the cases for and against the *Botta* rule and to resolve the issue for this jurisdiction in accordance with our judgment as to which line of authority rests on the sounder and more persuasive reasoning. Aside from deciding which of the factions we will align with, we can contribute nothing original to the continuing controversy over *Botta.*

In addition to *Botta,* cases which are commonly cited as authority for disallowance of the mathematical formula or per diem argument are: *Henne* v. *Balick,* 51 Del. 369, 146 A.2d 394; *Certified T. V. and Appliance Co.* v. *Harrington,* 201 Va. 109, 109 S.E.2d 126; *Faught* v. *Washam,* Mo., 329 S.W.2d 588; *Affett* v. *Milwaukee & Suburban Transp. Corp.,* 11 Wis. 2d 604, 106 N.W.2d 274; *King* v. *Railway Express Agency,* N.D., 107 N.W.2d 509;*Crum* v. *Ward,* W. V., 122 S.E.2d 18; *Hall* v. *Booth,* — Ohio App. —, 178 N.E.2d 619; *Harper* v. *Bolton,* 239 S.C. 541, 124 S.E.2d 54; *Caley* v. *Manicke,* 24 Ill. 2d 390, 182 N.E.2d 206; *Duguay* v. *Gelinas,* 104 N.H. 182, 182 A.2d 451; *Caylor* v. *Atchison, T. & S. Fe Ry.,* 190 Kan. 261, 374 P.2d 53; *Boop* v. *Baltimore & Ohio R.R.,* 118 Ohio App. 171, 193 N.E.2d 714.

Cases supporting plaintiff's contention that the argument is proper are: *4-County Elec. Power Ass'n* v. *Clardy,*

221 Miss. 403, 73 So. 2d 144; *Arnold* v. *Ellis,* 231 Miss. 757, 97 So. 2d 744; *Flaherty* v. *Minneapolis & St. Louis Ry.,* 251 Minn. 345, 87 N.W.2d 633; *McLaney* v. *Turner,* 267 Ala. 588, 104 So. 2d 315; *Continental Bus System, Inc.* v. *Toombs,* Tex. Civ. App., 325 S.W.2d 153; *Missouri-Kansas-Texas R.R.* v. *Jones, Okla.,* 354 P.2d 415; *Louisville & Nashville R.R.* v. *Mattingly,* Ky., 339 S.W.2d 155; *Yates* v. *Wenk,* 363 Mich. 311, 109 N.W.2d 828; *Little* v. *Hughes,* La. App., 136 So. 2d 448; *Eastern Shore Public Service Co.* v. *Corbett,* 227 Md. 411, 177 A.2d 701; *Corkery* v. *Greenberg,* 253 Iowa 846, 114 N.W.2d 327; *Hall* v. *Burkert,* 117 Ohio App. 527, 193 N.E.2d 167; *Newbury* v. *Vogel,* Colo., 379 P.2d 811.

Some courts have taken a middle course by holding that the allowance or disallowance of the argument rests in the discretion of the trial court on a case to case basis. *Ratner* v. *Arrington,* Dist. Ct. App. Fla., 111 So. 2d 82; *Johnson* v. *Brown,* 75 Nev. 437, 345 P.2d 754; *Jones* v. *Hogan,* 56 Wash. 2d 23, 351 P.2d 153; *Olsen* v. *Preferred Risk Mutual Ins. Co.,* 11 Utah 2d 23, 354 P.2d 575; *Wyant* v. *Dunn,* 140 Mont. 181, 368 P.2d 917.

We have not included any federal cases in our listings. As is stated in *Crum* v. *Ward, supra,* W. Va., 122 S.E.2d 18, 25: "The Federal Courts appear to be as widely divided on the question as are the State Courts."

In *Ratner* v. *Arrington, supra,* Dist. Ct. App. Fla., 111 So. 2d 82, the court summarizes, fairly and accurately, the underlying reasons which have persuaded the courts in other jurisdictions to either hold for or against the per diem argument. In respect to those courts which have sanctioned the argument, the opinion states at p. 89:

"Authorities approving such arguments give numerous reasons: (1) that it is necessary that the jury be guided by some reasonable and practical considerations; (2) that a trier of the facts should not be

required to determine the matter in the abstract, and relegated to a blind guess; (3) that the very absence of a yardstick makes the contention that counsel's suggestions of amounts mislead the jury a questionable one; (4) the argument that the evidence fails to provide a foundation for per diem suggestion is unconvincing, because the jury must, by that or some other reasoning process, estimate and allow an amount appropriately tailored to the particular evidence in that case as to the pain and suffering or other such element of damages; (5) that a suggestion by counsel that the evidence as to pain and suffering justifies allowance of a certain amount, in total or by per diem figures, does no more than present one method of reasoning which the trier of the facts may employ to aid him in making a reasonable and sane estimate; (6) that such per diem arguments are not evidence, and are used only as illustration and suggestion; (7) that the claimed danger of such suggestion being mistaken for evidence is an exaggeration, and such danger, if present, can be dispelled by the court's charges; and (8) that when counsel for one side has made such argument the opposing counsel is equally free to suggest his own amounts as inferred by him from the evidence relating to the condition for which the damages are sought.[1]

After careful consideration of the conflicting authorities we find ourselves in complete accord with *Botta* and the other authorities we have referred to which hold the mathematical formula argument impermissible. As did the court in *Boop* v. *Baltimore & Ohio R.R., supra,* 118

---

[1] As comprehensive an elaboration on the reasons for allowing the per diem argument as we think can be found in any of the cases is made by President Haymond of the West Virginia Supreme Court of Appeals in his dissenting opinion in *Crum* v. *Ward, supra,* W. Va., 122 S.E.2d 18, 31-43.

Ohio App. 171, 193 N.E.2d 714, we fully approve and adopt, as a statement of our position, and of our holding that the mathematical formula argument is improper, the language of Justice Hallows, speaking for the majority of the Wisconsin Supreme Court in *Affett* v. *Milwaukee & Suburban Transp. Corp., supra,* 11 Wis. 2d 604, 106 N.W.2d 274, 279-280, as follows:

"We believe that the arguments advanced disapproving the use of a mathematical formula are more persuasive. The use of a mathematical formula is pure speculation by counsel, which is not supported by the evidence and presents matters which do not appear in the record. The formula may be used to arrive at a gross figure by taking an arbitrary amount of money per day and multiplying it by the number of days in a year, times the number of years of the life expectancy of the plaintiff. Logically, if this method were followed, the gross amount arrived at should be discounted to its present worth. Seldom is pain constant for the entire life expectancy of the plaintiff, and if the evidence showed that it would be, the intensity of pain normally varies. It is true the formula can be tailored to fit the evidence in cases where pain is sporadic or intermittent, by taking into account only the number of days which the evidence shows future pain might be suffered. This use of the formula is still subject to the basic criticism that the formula must always include an arbitrary dollar amount per day or other period of time, which has no foundation in the record. It is argued that the per diem amount of money is relatively so small that it is obviously reasonable. Such an argument begs the question. The fact is such amount or valuation is not in the evidence and, indeed, could not be.

"The formula is sometimes used to illustrate or to

prove the reasonableness of a certain amount of money. The formula is then used in reverse to show that the lump sum is not unreasonable because it represents only a few dollars per month or per day. Generally, in determining the lump sum, the formula is applied as in the first method. Segmentation of a lump sum to show its reasonableness because the per diem amount is small is subject to the same criticism as the other method of use. There is no mathematical way of formulating a formula which will represent all the varying factors involved in pain and suffering in a given case without making assumptions of fact which are not in the evidence. The formula, rather than being an aid as claimed, would result in confusing the jury. The basic reasoning behind the use of any mathematical formula is not so much to aid, or even to persuade, the jury as it is to ultimately establish a fixed standard to displace the jury's concept of what is a fair and reasonable amount to compensate for the pain and suffering sustained as shown by the evidence in the light of the common knowledge and experience possessed by the jury of the nature of pain and suffering and the value of money.

"The difficulty in using a mathematical formula to measure damages for pain and suffering is inherent in the nature of pain and suffering. It cannot be measured by any such mathematical standard. Pain and suffering has no market price. It is not bought, sold, or bartered. It has no equivalent in a commercial sense. We cannot agree with the reasoning in the *Ratner* case, *supra,* that the absence of a fixed rule for the measurement of pain and suffering supplies a reason for the use of a mathematical formula. The present rule for measuring damage is as fixed as the nature of the subject matter will permit. True, counsel should

be entitled to a reasonable latitude in argument and in commenting on the evidence, its nature and effect, and may make proper inferences which may reasonably arise from the evidence. However, we fail to see where a mathematical formula or a pain-on-a-per-diem or per-month basis has its basis in the evidence, or in logical inferences from the evidence. Such arguments are beyond the scope of proper argumentation."

Little more need be said, we think, to make it clear that we are not disposed to adopt the middle course followed by those jurisdictions which leave the matter to the discretion of the trial court. In our opinion the vice in the mathematical formula argument is so inherent it precludes allowance of the argument even on a discretionary basis.

At the risk of being repetitious, it is our view that there can never be any legitimate basis or support in the record for counsel to ascribe, or for that matter the jury on its own initiative to take, a monetary valuation for whatever time unit of suffering happens to be selected in the case. The impossibility of rationally fixing a dollar value for an hour or other time unit of pain and suffering is well illustrated by the farfetched effort in this case to induce the jury to believe that this basic factor in the formula could be correlated to plaintiff's hourly rate of pay. Further, the normal fluctuation of intensity of pain during any given period of time or from period to period of time, which occurs in all but the rarest of cases of physical injury, means that the other principal factor, while used as a constant in the formula, is in reality a variable. And the same defect is obviously present when the formula is applied to mental anguish. We should be able to take it as a matter of common experience that the intensity of embarrassment or mental disturbance from a scar or other physical disability inflicted on a normal individual does

not continue at a set level during the remainder of his lifetime. To think otherwise is to ignore the faculty of the mind to forget or adjust to such handicaps. So that, whether in respect to past or future physical pain and suffering, or to mental anguish, uniform application of a dollar rate to an aggregate of time units, as the formula calls for, necessarily rests on false factors. As is stated in *Caley* v. *Manicke, supra,* 24 Ill. 2d 390, 182 N.E.2d 206, 208, the mathematical formula argument "produces an illusion of certainty, but it is only an illusion." Consequently, with these ever present defects in the formula we are unable to see any leeway for a trial court to logically exercise discretion in favor of the argument.

One further point to be considered in connection with the formula argument is plaintiff's contention, advanced on oral argument, that the adoption of the *Botta* rule in this jurisdiction would be inconsistent with our recent ruling in *Condron* v. *Harl,* 46 Haw. 66, 374 P.2d 613, to the effect that the court may advise the jury of the *ad damnum* in a personal injury action.

There are cases which hold or tend to the view that where the practice of the particular jurisdiction permits disclosure to the jury of the *ad damnum* it would be inconsistent not to allow the mathematical formula argument. *Johnson* v. *Brown, supra,* 75 Nev. 437, 345 P.2d 754; *Jones* v. *Hogan, supra,* 56 Wash. 2d 23, 351 P.2d 153; *Olsen* v. *Preferred Risk Mutual Ins. Co., supra,* 11 Utah 2d 23, 354 P.2d 575; *Wyant* v. *Dunn, supra,* 140 Mont. 181, 368 P.2d 917.

In the *Botta* case itself the New Jersey Supreme Court concluded that its disallowance of the mathematical formula argument might be deemed to conflict, to some degree, with its prior rulings, in several precedents referred to, holding that it was not improper for counsel to advise the jury of the amount set out in the *ad damnum*

clause of the complaint. The court held, at p. 725: "In order that the rule announced in the present case may be invested with its full and intended scope, those decisions are expressly overruled. Moreover, it is declared to be improper to send the complaint to the jury as a matter of course, since it contains the damages demanded."

We do not consider that there is any comparison between permitting the jury to know the amount of the *ad damnum* and allowing it to compute a verdict on the per diem basis. The sole purpose of informing the jury of the *ad damnum* is to advise it of the limitation on the possible amount of the verdict. However, informing the jury of this limitation in no way intimates to it that the amount of the *ad damnum* may affect or enter into the process of reasoning to be followed in arriving at the amount of the verdict. Quite the contrary is true, as readily appears from consideration of what was said and held in the *Condron* case. The instruction approved in that case read: "[I]t is for you, the jury, using your own judgment, common sense and human experience, to estimate the monetary value of past, present and future pain, suffering and disability, if any, not to exceed $100,000 the amount claimed by plaintiff." The defendant's objection to the instruction was: "[O]n the ground that it contains an improper reference to the amount sued for and because of the refusal to instruct that the amount prayed for may not be considered by the jury in arriving at their verdict." After noting that the latter part of the objection was not supported by the record we stated in the opinion (at p. 620): "It is settled in this jurisdiction that such an instruction is not objectionable. *Hoffschlaeger Co.* v. *Fraga*, 290 F. 146 (9th Cir.), *aff'g Fraga* v. *Hoffschlaeger*, 26 Haw. 557. The amount claimed in the complaint is, however, no indication of the amount of damages—it is merely the maximum amount permis-

sible if the evidence should warrant it. Consequently the defendant is entitled to a properly worded instruction cautioning the jury to award only such damages as the evidence warrants, irrespective of the amount claimed in the complaint. To obtain such instruction the defendant of course must submit it, but in this case did not."

Believing, as we do, that there is no incompatibility between allowing the jury to know the *ad damnum* and refusing to permit the per diem argument, we do not concur in the view taken by those cases above cited in which the allowance of the mathematical formula argument is made to depend on the particular jurisdiction's attitude on the *ad damnum* rule. For the same reason we find no necessity for contemplating the action taken by the New Jersey court in *Botta* in recalling its former ruling allowing disclosure of the *ad damnum*. In that respect, and to the extent the ruling pertains to disclosure of the *ad damnum*, we follow the holding of *Duguay* v. *Gelinas, supra,* 104 N.H. 182, 182 A.2d 451, given at p. 454 as follows: "We leave undisturbed Sanders v. Boston & M. Railroad, 77 N.H. 381, 92 A. 546 and Williams v. Williams, 87 N.H. 430, 182 A. 172 which allow counsel to argue to the jury the lump sum he seeks to recover or the *ad damnum* of the writ. To this limited extent we do not follow Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331."[2] *Cf., Caylor* v. *Atchison, T. & S. Fe Ry., supra,* 190 Kan. 261, 374 P.2d 53, 63, dissenting opinion; *Caley* v. *Manicke, supra,* 24 Ill. 2d 390, 182 N.E.2d 206; *Affett* v. *Milwaukee & Suburban Transp. Corp., supra,* 11 Wis. 2d 604, 106 N.W.2d 274; and *Faught* v. *Washam, supra,* Mo., 329 S.W.2d 588.

While our holding, that no inconsistency exists be-

---

[2] The question of whether counsel may argue for a lump sum award in a personal injury action has never been considered by this court. Nothing in this opinion is intended to reflect a view on that issue.

tween. *Condron* and the ruling we are making on the mathematical formula argument, is negative in nature and effect, it should be noted that positive support for our present ruling is found in the statement of the court in *Pooler* v. *Stewarts' Pharmacies, Ltd.,* 42 Haw. 618, 625, as follows: "The verdict in this case was for general damages, embracing items not subject to precise mathematical calculations, such as permanent injuries, pain and suffering." It is also apparent that our ruling is in harmony with the statement from *Gabriel* v. *Margah,* 37 Haw. 571, 582, as follows: "Hence it is that while in an action of this kind [by parent for wrongful death of minor child] pecuniary damages are the limit of recovery, they include compensation for losses which are difficult of exact estimation and to which no standard of value may be applied and the damages for which are and necessarily must be left to the sound discretion of the trier of the facts."

The *Pooler* and *Gabriel* cases bear out, as does the *Condron* case, that the proper test for determining damages for physical pain and suffering or mental anguish is what the jury considers will reasonably compensate the plaintiff for the pain and suffering or anguish in light of the intensity and extent thereof as disclosed by the evidence, and also that such determination must be left to the sound discretion of the jury.

Specifications of Error No. 8 and No. 9 are sustained.

By Specifications of Error No. 1 and No. 2 it is contended that the trial court erred in refusing to give Defendant's Requested Instruction No. 24 and Requested Instruction No. 25, as modified, respecting the duty of an injured party to take reasonable steps to minimize the effects of his injury.

Requested Instruction No. 24, as set out in Specification of Error No. 1, reads:

"It is the duty of any person who has been injured

to use reasonable diligence and reasonable means under the circumstances to prevent the aggravation of such injuries and to effect a recovery therefrom."

Requested Instruction No. 25, as modified on submission, is as follows:

"When one does not use reasonable diligence to care for his or her injuries, and the injuries are [aggravated] *prolonged or accentuated* as a result of such failure, the liability, if any, of another person whose negligence was a proximate cause of the original injury, must be limited to the amount of damages that would have been suffered if the injured person himself or herself had exercised the diligence required of him or her."

Plaintiff expressly states that she has no quarrel with Defendant's Requested Instruction No. 25, as modified, as a proper statement of the law. She makes no contention that Defendant's Requested Instruction No. 24 is incorrect in that respect except for the inclusion in the instruction of the reference to "the aggravation of such injuries." Whether plaintiff made this objection in the court below does not appear from the transcript. However, it appears that, consistently with the modification made in Instruction No. 25, the original Instruction No. 24 in the file was modified by the deletion from it of the words "prevent the aggravation of such injuries and to." It also appears from the transcript that defendant's objection, noted after the court had charged the jury, was to the refusal to give Defendant's Requested Instruction No. 24 "as modified." We therefore will consider that Defendant's Requested Instruction No. 24 was modified by deletion of the objectionable reference to aggravation of injuries.

The real objection to these two instructions now urged by plaintiff is that there was no foundation in the evidence to warrant any instruction respecting the necessity of

mitigating damages in that there is nothing to show plaintiff failed to use reasonable diligence in attending to her injuries. Defendant, on the other hand, contends that the evidence justified the requested instructions, both in respect to the failure of the plaintiff to seek medical aid for relief from the continuing pain in her shoulder and neck and in respect to her failure to submit to plastic surgery to reduce the size of the scar on her forehead.

The evidence shows that the plaintiff visited her physician, Dr. Florine, on three occasions, viz., February 13, 16, and 23, 1959, and that on these visits the doctor told her to continue using the pills given her at the hospital and after the supply was used up to take aspirin and apply heat to relieve pain when it occurred. X-rays of plaintiff's bruised right shoulder and of her head, taken on the first visit, revealed no evidence of fracture. The doctor discharged plaintiff as fit to return to work on the last visit. It is conceded that between that date and the time of the trial (June 1961) plaintiff did not seek any medical help although, as has been stated, she testified that the pain recurred at intervals throughout the entire period.

Dr. Florine testified that her notes showed that when she discharged plaintiff on February 23, 1959, she told her "that if she had any further difficulties," to report back. When asked on cross-examination whether Dr. Florine told her to come back if she had any further trouble, plaintiff replied: "Yes, she did. She told me that in case the shoulder—if pain occurred—to see her again. She told me, too, that the shoulder bruise would be for a little while but she didn't know how much longer it would pain."

In justification for or explanation of her failure to seek further medical help, plaintiff asserted financial hardship and also stated that by following the doctor's previous instructions she obtained some relief. The evi-

dence shows that plaintiff, in fact, had financial assistance available, by way of medical insurance and sickness and disability benefits. She testified however that she was ignorant of the existence of the sickness and disability benefits and of the extent of the benefits in the case of medical insurance.

The general rule applicable is stated in 15 Am. Jur., *Damages*, § 37, p. 436, as follows:

> "It is also incumbent upon the injured person to submit to reasonable treatment and to follow the advice of a competent physician. No damages will be allowed which might have been prevented by submitting to treatment to which a reasonably prudent man would have submitted to improve his condition. As a rule, if the injury is aggravated by the plaintiff's neglect to follow the directions of his physician, he is to that extent debarred from recovering."

See *Tiggerman* v. *City of Butte*, 44 Mont. 138, 119 Pac. 477; *Christiansen* v. *Hollings*, 44 Cal. App. 2d 332, 112 P.2d 723, 729-730; *Morro* v. *Brockett*, 109 Conn. 87, 145 Atl. 659, 661; *cf.*, *Izumi* v. *Park*, 44 Haw. 123, 128, 351 P.2d 1083, 1086.

It is urged on behalf of plaintiff that the course of action followed by her was reasonable and substantiated by the following: her ignorance of financial aid; the fact that on each of the three occasions she visited her doctor she was given the same instructions; that the nature of her complaints had not changed; and that she obtained relief whenever she had pain by following the prescribed treatment. Her position in that respect is put in her brief, as follows: "In the face of such a train of events, isn't it reasonable to assume that anyone acting reasonably would have concluded that there was no need to see the doctor again because he could have expected nothing new in the way of a prescription and because he was already getting

relief from the reason for seeing a doctor?"

It might well be that if the jury accepted plaintiff's explanation it could have concluded that she acted reasonably in not returning to her own doctor or in not seeking medical attention elsewhere. On the other hand, there is another view of the evidence which would permit a contrary conclusion to be drawn. It might be argued, reasonably and with support of the record, that one who suffered, as plaintiff testified she did for a period of some 28 months, without making any attempt to seek medical help, particularly in view of the attending physician's last words to return if the pain continued, was not following the course that a reasonably prudent person would have taken under the circumstances to alleviate his condition. Certainly, the conflicting evidence and the different inferences that might have been drawn from it, framed an issue for the jury to consider in connection with its determination of damages for past pain and suffering. *White* v. *Seier*, 37 Tenn. App. 437, 246 S.W.2d 241, 249. Defendant should have been permitted to argue this point and to have the jury's consideration directed to the applicable principles of law as set out in his Requested Instructions No. 24 as modified and No. 25 as modified. For that reason, Specifications of Error 1 and 2 are sustained.

Since this cause is to be remanded, we will express our views respecting defendant's contention that the instructions under consideration had application to the scar also.

Dr. Florine testified, on cross-examination, that in her opinion as a general practitioner, and "not a specialist in plastic surgery," plaintiff's scar could be improved by plastic surgery. She said, "It isn't a deep scar and I would think, as a general practitioner, it probably could be; but I am not a specialist in plastic surgery." Neither Dr. Florine nor any other doctor suggested to or advised plaintiff to submit to plastic surgery.

The defendant called Dr. John J. Lowrey, who had examined plaintiff prior to trial. The doctor, a specialist in neurosurgery, testified he had had experience with plastic work on scars on the scalp and that it was his opinion plaintiff's scar could be made narrower, but that he would not personally recommend plastic surgery because he thought the scar did not detract from plaintiff's appearance. He stated no scar could ever be completely removed but that if the scar bothered plaintiff it could be made narrower by plastic surgery and if such had been done by an expert in the field, the chances of making it less noticeable than at the time of the trial would have been good. Dr. Florine and Dr. Lowrey were the only medical witnesses called.

The mere fact that the scar might have been reduced in size by plastic surgery is not sufficient to hold that plaintiff acted unreasonably in not resorting to such treatment. Other factors, such as the cost of the operation, the inconvenience resulting from it, and whether or not it had been recommended by a medical expert, were pertinent to the issue. See *Updegraff* v. *City of Ottumwa,* 210 Iowa 382, 226 N.W. 928, 931; *Ouillette* v. *Sheerin,* 297 Mass. 536, 9 N.E.2d 713, 716-717; *Burley* v. *Chase,* La. App., 76 So. 2d 593, 594; *Bennett* v. *Bennett,* 224 Ala. 335, 140 So. 378, 380.

No testimony was adduced in this case on the nature of the operation that would be required to reduce the size of plaintiff's scar. While it might be surmised from the size of the scar that a remedial operation could be performed without much attendant inconvenience or pain, there is no evidence on what the operation would cost.

It does not appear that the plaintiff was ever told by a competent physician or surgeon that plastic surgery would be advisable. Dr. Lowrey's testimony as to the advisability of the operation was equivocal. The defendant

had the burden of proving the facts which would operate to bring the mitigation into effect. *Mengel Co.* v. *Parker,* 192 Miss. 634, 7 So. 2d 521, 523. He did not directly undertake to meet that burden. It is our opinion that such evidence as was adduced touching on plastic surgery was insufficient to have permitted Defendant's Instructions No. 24 and No. 25 to relate to the determination of damages attributable to the disfigurement of the scar. On the evidence as it stands it would be improper for defendant's counsel to argue mitigation of damages in connection with the scar and if counsel for plaintiff deemed it advisable to make the request, an instruction limiting the jury's consideration of the two instructions on mitigation to the issue of whether or not plaintiff had acted reasonably in attending to her neck and shoulder injuries would be in order.

By Specification of Error No. 4 defendant assigns error to the giving of Plaintiff's Instruction No. 21, as modified, reading:

"If you find for the Plaintiff against the Defendant, it will then be your duty to fix the amount she is entitled to recover. Damages are assessed upon the theory of compensation and in fixing the amount you may consider the character and extent of her injuries, if any, whether the same is temporary or permanent; the impairment of her ability to pursue her calling or business, if any has been proved; any mental or physical pain and suffering she may have suffered, if any, and you may give her such amount in damages as is proved by the evidence on these respective subjects, if any such evidence there be, as will compensate her for the injuries you have found her to have received."

The specific objection to the instruction was that there was no evidence to support the inclusion of the provision in the instruction permitting the jury to consider, as a

possible item of damages, "impairment of the ability of the Plaintiff to pursue her calling or business."

The objection was well taken. There is no medical testimony that there would be any pain or disability in the future. There is not the slightest evidence that plaintiff's earning power was affected by any of her injuries, including the scar. The evidence is that she returned to work two weeks after she was injured and did not thereafter miss a day on account of the injuries. She successfully passed competitive examinations which resulted in her obtaining advancement in employment with a substantial increase in pay. On this state of the evidence it was error to include any reference in the instruction to impairment of earning power. *Condron* v. *Harl, supra,* 46 Haw. 66, 374 P.2d 613. Specification of Error No. 4 is sustained.

Specification of Error No. 5 assigns error in the giving of Plaintiff's Instruction No. 22, as modified, which reads as follows:

"If you find for the Plaintiff she should be awarded compensation for all injuries, past and prospective. These are intended to embrace and include all effects, if any, of the injuries which the Plaintiff endured, bodily and mental suffering and the disfigurement, or permanent annoyance or humiliation which is reasonably liable to be caused by the deformity resulting from the injury, if any."

Defendant's objection to the instruction in effect was that it directed attention to and permitted the jury to consider prospective damages for permanent injuries in addition to the prospective damages for the annoyance and embarrassment from the scar. It is urged that there is no evidence in the case to warrant a finding of such permanent injuries and that therefore the instruction was improper.

Plaintiff's contention is that the only reference to permanent injuries in the instructions is that attributable to the scar. In order to accept this interpretation it is necessary to take the words "bodily and mental suffering" as having reference only to suffering from embarrassment over the scar. We do not think this interpretation is correct in view of the words that follow "bodily and mental suffering," in the instruction. Reasonably interpreted, we think the instruction presents for the jury's consideration as separate items, (1) any bodily and mental suffering, past and prospective, and (2) permanent mental disturbance caused by the scar. That undoubtedly was the way the instruction was interpreted below. The transcript shows that counsel for plaintiff argued future pain and suffering as an element of damages and the chart he used to illustrate his argument listed "physical pain," in addition to the scar and mental suffering, as an item of future damages.

In the trial plaintiff testified she was still suffering pain from the injuries in the shoulder and neck. The only abnormality of an objective nature which the plaintiff had at the time of the trial was the scar. All other complaints were purely subjective. No medical testimony was offered to substantiate the permanency of the injuries to plaintiff's shoulder and neck. Under the circumstances the jury could not properly consider prospective bodily suffering as an element of damages. The applicable rule is set out in 20 Am. Jur., *Evidence,* § 778, p. 649, as follows:

"The question of the necessity of expert evidence to warrant submission to the jury of the issue as to the permanency of an injury or as to future pain or suffering depends, in a large measure, upon the character of the injury involved, whether it is subjective or objective. Where the injury may be characterized as one of an objective nature and it is plainly apparent from

its nature that it will be permanent or that the injured person will necessarily undergo pain and suffering in the future, the presentation of expert testimony is not essential; in such cases it is proper for the jury to pass upon such question without the aid of medical or other expert testimony. On the other hand, where the injury is subjective in character and of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering, the courts generally require the introduction of competent expert opinion testimony bearing upon the permanency of such injury or the likelihood that the injured person will endure future pain and suffering before allowing recovery therefor. Some courts have held that expert testimony as to the permanency of an injury or as to future pain and suffering is not required under the circumstances involved, without expressly stating that the injury involved was of an objective character."

*Diemel* v. *Weirich,* 264 Wis. 265, 58 N.W.2d 651, cited by defendant, fits this case. In the cited case the plaintiff was violently thrown against the windshield in an automobile accident in 1949 and suffered injuries to her face, head and right leg. At the time of the trial in 1952 she testified that her leg still bothered her on occasion and that she still had bad headaches twice a week. Defendant's request for an instruction that no allowance should be made for future pain and suffering or for permanent disability was refused. The court instructed the jury that they were to allow no damages for permanent disability but that, in case it was satisfied to a reasonable certainty that the plaintiff would in the future continue to suffer pain or discomfort or disfigurement as a result of the injury then they should take that into consideration and make just compensation therefor. The Wisconsin Supreme Court held it was prejudicial error not to give the defend-

ant's requested instruction and in instructing the jury that under the facts of the case future pain and suffering could be taken into consideration. After quoting the general rule from American Jurisprudence, set out above, the court stated and held at pp. 652-653, as follows:

"We believe that sound public policy requires adherence to such rule. It is a rare personal injury case indeed in which the injured party at time of trial does not claim to have some residual pain from the accident. Not being a medical expert, such witness is incompetent to express an opinion as to how long such pain is going to continue in the future. The members of juries also being laymen should not be permitted to speculate how long, in their opinion, they think such pain will continue in the future, and fix damages therefor accordingly. Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities (not mere possibilities), as to whether the pain will continue in the future, and, if so, for how long a period it will so continue. In the absence of such expert testimony (which was the situation in the instant case) the jury should be instructed that no damages may be allowed for future pain and suffering.

"We, therefore, conclude that it was prejudicial error not to have given the requested instruction, and instead to have instructed the jury that they might take into consideration future pain and suffering in fixing the plaintiff Ida Diemel's damages."

Specification of Error No. 5 is sustained.

Specification of Error No. 6 challenges the giving of Plaintiff's Instruction No. 25-A. In the instruction the court advised the jury the parties had agreed that, according to a standard mortality table in evidence, the life expectancy of a female of plaintiff's age, 28 years on

February 12, 1959, was 39 years. The instruction further told the jury that this fact, in conjunction with other facts bearing on plaintiff's state of health, could be considered by it in arriving at the amount of damages, if any, to be awarded.

The principal objection made below to the instruction was that there was nothing in the case which would make the mortality table material, particularly "that there is no competent medical evidence of future pain and suffering as to the scar."

It is obvious that the real purpose for which the plaintiff offered the instruction was to permit counsel to suggest in argument the mathematical formula computation of damages attributable to future day-by-day mental anguish from the scar. Since we have held that the argument was improper, the table could have no standing or materiality in computing damages for the scar on that basis.

The use of mortality tables in personal injury actions is limited to injuries of a permanent character. 15 Am. Jur., *Damages*, § 339, p. 779; 25 C.J.S., *Damages*, § 81, pp. 593-594; 50 A.L.R.2d 419, 421. The assessment of damages in the case of a disfigurement of a female's face is difficult. There is no rule by which they may be measured. *McCartie* v. *Muth*, 230 Wis. 604, 284 N.W. 529, 530. The age of the female is a factor to be considered. See *Greer* v. *Palmer*, 55 Pa. D. & C. 109, 112; *Conroy* v. *Reid*, 132 Me. 162, 168 Atl. 215; *New York, Chicago & St. Louis R.R.* v. *Henderson*, 237 Ind. 456, 146 N.E.2d 531, 543. In this case, we think plaintiff's age and consequently her life expectancy had some general bearing, slight as it might be, in determining fair and just compensation for the permanent injury from the scar. See *Atlantic Coast Line R.R.* v. *Anderson*, 35 Ga. App. 292, 133 S.E. 63; *Teissier* v. *Stewart*, 11 La. App. 164, 121 So. 777. For

that limited reason, Plaintiff's Instruction No. 25-A can be justified. Specification of Error No. 6 is therefore overruled.

Specification No. 7 covers the allowance of Plaintiff's Instruction No. 26 over objections similar to those made against Instruction 25-A, and also over the additional objection that the evidence did not permit consideration of future physical pain. Instruction 26 reads:

"If you find for the Plaintiff against the Defendant, in awarding damages for permanent injuries, mental suffering and physical pain in the future, you must reduce the award for these items to its present value."

It has been shown that there was no evidence in the case to support an award of damages for future physical pain from permanent injuries. Inclusion of reference to such injuries in the instruction was in itself error. However, as with Instruction No. 25-A, the obvious purpose of offering Plaintiff's Instruction No. 26 was for use in connection with the mathematical formula argument on damages for the scar. In arguing this feature of the case counsel for plaintiff, after referring to the mortality table, stated: "Now, what should she get? If it were a dollar a day, it would be $14,000 over the period of 39 years, but you will be instructed to reduce it to its present value." The mathematical formula argument being improper, and since, unlike Instruction No. 25-A, there is no other basis in the record to justify Instruction No. 26, Specification of Error No. 7 is sustained.

Defendant contends, by Specification of Error No. 3, that the trial court erred in refusing to give his Requested Instruction No. 31, reading as follows:

"In the law we recognize what is termed as an 'unavoidable' or 'inevitable' accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply describe an acci-

dent that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the use of greater foresight, caution or skill than was required in the exercise of ordinary care, still no one may be held liable for injuries resulting from it."

*Nawelo* v. *von Hamm-Young Co.*, 21 Haw. 644, is the only direct authority cited in support of defendant's contention. In that case it was held that the trial court committed error in refusing to give an instruction on unavoidable accident. The facts were that the plaintiff, while working in a ditch in the street, was struck by an automobile which the defendant was backing out onto the street from a private driveway. The decision was rendered in 1913—when, we might add parenthetically, problems concerning traffic on public highways were relatively simple and personal injury actions involving the operation of motor vehicles were not common. Judged in light of modern traffic conditions, we frankly have difficulty, to say the least, in understanding the necessity or appropriateness of such an instruction under the facts of the *Nawelo* case. As is conceded by defendant, the instruction need not be given in every negligence action. Whether or not such an instruction should be given depends entirely upon the facts of the particular case. It is so stated in 65 C.J.S., *Negligence,* § 21, p. 430, as follows:

"It is impossible to announce a fixed rule applicable to all cases by which it can be decided just when the issue of unavoidable accident is presented. In order to determine whether such issue is involved, the facts of each particular case must be examined with the view of ascertaining whether there is presented a theory under which the accident could have happened, notwithstanding all the persons concerned exercised the degree of care required by law."

Kapiolani Boulevard in the vicinity of the collision in this case is divided by a medial strip 14 feet wide. There are three permanently marked lanes for traffic on each side of the strip. The mauka (north) portion of the boulevard normally carries traffic flowing Ewa (west) into town and the makai (south) portion normally carries outbound traffic going in a Kokohead (east) direction. To ease the flow of early morning inbound traffic, cones were placed to mark off the lane of traffic nearest the medial strip on the makai half of the boulevard so as to provide an extra lane for such inbound traffic.

The only regulation contained in the record on the placement of cones to control traffic is § VI-11-f of the Traffic Code of the City and County of Honolulu (Ordinance No. 1508), which provides that when cones are used to temporarily control flow of traffic, the lines designated by the cones shall have the same regulatory effect as the permanent markings. There was evidence that the practice of using cones to provide an extra lane on Kapiolani Boulevard for morning traffic had been followed for about a year and a half.

There was also introduced into evidence § IX-10 of the traffic code, providing: "Whenever any highway has been divided into two or more separate roadways by medial strips, every vehicle shall be driven only upon the right-hand roadway * * *." No exception is provided in this section of the traffic code, nor by any other regulation in evidence, to permit diversion of traffic to the left by coning in a highway divided by a medial strip. However, neither party has argued or mentioned, in this court, the apparent inconsistency between the provisions of § IX-10 and the coning practice.

Defendant testified that on the morning in question he was traveling makai on Paani Street, that he made a stop at its intersection with Kapiolani Boulevard and

then crossed the mauka half of the boulevard and again stopped in the break in the medial strip opposite Paani Street. He said he looked to the right, and started from his stopped position intending to turn left into the lane just makai of the medial strip. He did not look to the left but as he crept forward he heard the screeching of brakes and upon looking to his left saw the car in which the plaintiff was riding about 20 feet away. Immediately thereafter his car collided with Hirahara's car, which was traveling Ewa in the extra lane. Defendant stated that the intersection was unfamiliar to him and that he did not see any cones before the collision. However he testified he had been driving for 11 years and knew generally of the practice of coning to create an extra lane and that he realized the significance of such practice.

The giving or refusal to give an unavoidable accident instruction rests to a large extent with the trial court. But, as appears from the extended annotation on Unavoidable Accident Instruction in 65 A.L.R.2d 12, exceptional circumstances are required to warrant such an instruction. It is stated in the annotation at pp. 23-24: "Since in most jurisdictions there has been so little inclination to regard a refusal of the instruction as reversible error, and the giving of the instruction has so often, and with ample cause, been held reversible error, the better course would appear to be to omit the instruction except in those instances in which quite plainly it is peculiarly appropriate." On the facts of this case we perceive no clear call for an instruction on unavoidable accident.

Defendant was fully protected by the court's general instructions on negligence, proximate cause and burden of proof. The reversal in the *Nawelo* case was not only for the denial of the unavoidable accident instruction but also by reason of the trial court's refusal to give a re-

quested instruction to the effect that the mere happening of a casualty is not evidence of negligence. In the present case, the court gave an equivalent instruction for the defendant in the following language: "The mere fact that an accident happened, considered alone, does not permit the jury to draw the inference that the accident was caused by someone's negligence."

The issue on whether the defendant was negligent or not was adequately and fairly presented by the court's charge for the jury's determination. In our opinion, to have given the proffered unavoidable accident instruction would have beclouded rather than clarified the. primary issue of negligence. We find no error in the court's refusal to instruct on unavoidable accident. Specification No. 3 is overruled.

However, in order that we may not be taken as tacitly approving the form of Defendant's Instruction No. 31, we should add that we think there is considerable merit to plaintiff's contention that the instruction, in the form requested, is confusing and would be difficult for a jury to understand. A proper instruction of this kind should focus attention on the basic principle that an unavoidable accident occurs only when no party to the incident is guilty of negligence. This concept was set forth in the instruction approved by the court in the *Nawelo* case, at p. 650, in the following language: "If all persons concerned in a collision on a public highway do and omit to do all that ordinarily prudent and careful persons placed under the same circumstances would have done and omitted to do and still. an injury results, that injury is an unavoidable accident."

Defendant's Instruction No. 31 was taken from 1 California Jury Instructions, Civil, B.A.J.I., 3d ed. 1943, p. 158 (No. 134 4th ed. 1956). The instruction manual reveals that the instruction had been approved in many

California cases. As will be seen such approval no longer exists.

It might first be noted that there are several California decisions holding that although it would have been proper to have given the unavoidable accident instruction in the particular circumstances of the case, it was not error to refuse the instruction where all elements of defendant's liability were covered by other instructions. *E.g., Jaeger* v. *Chapman,* 95 Cal. App. 2d 520, 213 P.2d 404; *McMahon* v. *Marshall,* 111 Cal. App. 2d 248, 244 P.2d 481; *Lloyd* v. *Southern Pac. Co.,* 111 Cal. App. 2d 626, 245 P.2d 583.

In *Jaeger* v. *Chapman,* the defendant contended that the trial court's refusal to give the same instruction we have under consideration was error. The appellate court rejected the contention, stating at p. 406: "Thus the jury was fully instructed that the defendant was not liable if he was not negligent and if such negligence was not a proximate cause of the accident. While it would not have been error to have given such an instruction, it was not error to refuse to give it where all elements of defendant's liability were covered by other instructions. The defendant is not entitled to have his defense overemphasized and cannot complain that his defense is not stated in a particular way, as long as the defense is adequately and fairly covered."

In a more recent case, *Butigan* v. *Yellow Cab Co.,* 49 Cal. 2d 652, 320 P.2d 500, the California Supreme Court disapproved generally the giving of an unavoidable accident instruction. We are unwilling to go that far but we refer to the case since the instruction involved in it included, in part, the language of Defendant's Requested Instruction No. 31, and the California high court determined that the instruction was not only unnecessary but also confusing.

Defendant's tenth and last specification of error pre-

sents the claim that the verdict was excessive. Since the cause is to be remanded we will not rule on the specification.

The specifications we have sustained cover errors pertaining to damages only. Nothing in connection with the errors under the specifications sustained can be considered to have possibly influenced the jury's finding on liability. There will therefore be no necessity for a retrial on that issue.

Reversed and remanded for new trial on the issue of damages.

*William L. Fleming* (*Smith, Wild, Beebe & Cades* of counsel) for appellant.

*Henry H. Shigekane* (*Walter G. Chuck* of counsel) for appellee.

### CONCURRING OPINION OF LEWIS, J.

I concur in the opinion of the court except the holding that Defendant's Requested Instruction No. 25 was improperly refused. Requested Instruction No. 24 was all that defendant was entitled to. No. 25 was too definite, in that it would have instructed the jury, if of the view that plaintiff had not used reasonable diligence to care for her injuries, to limit the damages to "the amount of damages that would have been suffered if the injured person himself or herself had exercised the diligence required of him or her." There was no evidence that would have enabled the jury to carry out the instruction.

The court has recognized that as to the scar such is the case. As to the neck and shoulder pain, evidence that further medical care would have alleviated plaintiff's suffering, and if so within what period, is nonexistent.

Implicit in the court's holding in *Condron* v. *Harl,* 46 Haw. 66, 374 P.2d 613, and in its adoption of the *Botta*

rule in this case, is the principle that the jury should not be instructed or addressed in terms of definitely computable damages when the subject matter does not lend itself to such definiteness, either inherently or because of lack of proof which could have been adduced. The present case is of the latter type. *Cf., Stipp* v. *Karasawa,* 318 S.W.2d 172 (Mo.).

### CONCURRING OPINION OF MIZUHA, J.

I concur only in the result since I am in total disagreement with that portion of the opinion of the court which holds that the use of a mathematical or per diem formula in argument of counsel is improper. Since nothing could be added to the numerous opinions in other jurisdictions which are against the "Botta rule," I deem it unnecessary to do more than state my conclusion.

I concur with Justice Lewis that Defendant's Requested Instruction No. 25 was properly refused by the trial court since there was no evidence to show that plaintiff's neck and shoulder pain would have been alleviated by further medical care.