No. 38,911

Ralph W. McAlister, *Appellee* and *Cross-appellant*, v. Orval McNown, *Appellant* and *Cross-appellee*.

(258 P. 2d 309)

Opinion filed June 6, 1953.

*Wm. P. Thompson,* of Wichita, argued the cause, and *Riley O. Robbins,* of Sedan, and *A. W. Hershberger, J. B. Patterson, Richard Jones, H. E. Jones,* and *Jerome E. Jones,* all of Wichita, were with him on the briefs for the appellant and cross-appellee.

*John M. Wall,* of Sedan, and *Laurence M. Turner,* of Moline, argued the cause and were on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

Harvey, C. J.: Plaintiff brought this action for damages for personal injuries and damage to his automobile which resulted from a collision with a car driven by defendant alleged to have been caused by defendant's negligence. The jury returned a general verdict in favor of plaintiff for $9,105, and answering the special questions, itemized damages as follows: (*a*) Doctor and hospital expenses $420; (*b*) loss of earnings $1,800; (*c*) damages to automobile, $1,885; (*d*) pain and suffering $1,500 and (*e*) permanent injuries $3,500. Defendant filed a motion for judgment on the special findings and a motion to set aside certain of the special findings. These were overruled. Defendant also filed a motion for a new trial upon the ground, among others, that the verdict was excessive. The court found:

"That the motion for a new trial should be overruled but that the amount of the judgment should be reduced to $7,500.00, said amount being a reduction of damages allowed by reason of damage to the automobile from the answer of the jury to special question No. 8, finding the damages to the automobile as

being $1,885.00 to the sum of $1,385.00 and the further reduction of $1,105.00 generally, so that the total judgment would amount to $7,500.00."

Judgment was rendered accordingly, and the defendant appealed. Thereafter plaintiff took a cross-appeal "insofar as said judgment reduces the amount of the verdict of the jury by $1,105.00."

The pertinent facts shown by the record may be summarized briefly as follows: Plaintiff, a stockman, owned 1,040 acres of grass land in Elk county and he and one of his sons owned 480 acres in Chautauqua county. He and his two adult sons together operated a cattle business and divided the profits—one half to plaintiff and one fourth to each of the sons. Plaintiff's part of the business is the buying and selling of cattle. His practice is to buy small cattle in the fall, winter them, graze them in the summer and put them in the feed lot and sell them as slaughter cattle in the spring.

On August 28, 1950, he and his two sons were driving south on a country road past the farm home of the defendant on the west side of the road, where a private road led from his barn into the country road. On the west side of the country road to the north of defendant's driveway there were weeds and brush higher than an automobile and sufficiently dense that one could not see through them from the country road. As plaintiff was driving down the hill at about 35 miles per hour defendant was driving out onto the country road on his private driveway, when the two cars collided. The left front portion of defendant's car struck the right front portion of plaintiff's car, diverting its course to the southeast. The right front wheel was broken off plaintiff's car and there were damages to the fender, steering rods and radiator. Defendant's car was also damaged, but he made no claim to anyone for that.

Plaintiff was injured and taken to the hospital. Doctor Snyder, who treated him there on the same day, found that he had sustained a closed fracture of the left patella, or the knee cap. Such an injury involves the ligaments as well as the bone. X-ray pictures were taken and on August 30 the doctor operated on the knee and removed small fragments from the lower half of the knee cap. Plaintiff made an uneventful recovery from the surgery and was dismissed from the hospital on September 8, 1950. The doctor saw him several times later at the clinic. At that time plaintiff had a complete range of motion, but his knee was still weak. The doctor testified it was his opinion that he sustained a five percent permanent disability as a result of the injury. The doctor testified:

Plaintiff "has not recovered quite as much at this time as I anticipated, because he has not done the quadriceps exercises I recommended. The wasting of muscles has come from lack of use."

Dr. L. Clair Hays of Cedar Vale, who had never seen him before, examined plaintiff on December 11, 1952, the day before the trial was had. To evaluate his disability which he had from a previous knee injury, he examined the plaintiff, made X-ray pictures, and obtained a history from him. The witness testified it to be his opinion that plaintiff is disabled between ten and fifteen percent. Answering a special question the jury found that plaintiff's permanent disability was fifteen percent.

Mr. Earl Garrison, an automobile dealer at Howard, Kansas, testified that on January 1, 1949, he sold plaintiff a 1949 Frazer sedan; that plaintiff paid him around $2,000, which was the difference between his old car, a 1941 Chevrolet, which he took, and the price of the new car; that he serviced the Frazer for plaintiff during the time he owned it; that in his opinion the 1950 National Automobile Dealers' Association book reflects the fair market value of the car on August 28, 1950, and that it showed the value to be $1,835 plus $50 for the overdrive; that he had seen the wreckage of plaintiff's car following the collision; that he was not in the wrecking business and did not have a body shop, but he expressed the opinion that the car was worth from $200 to $300 as of the time of the trial. It might have been worth a little more than that at the time of the wreck.

Directly after the wreck plaintiff's car was pulled into defendant's lot and left standing near the barn, and continued to remain there until the time of the trial. Plaintiff testified that his reason for doing that was that he expected the insurance company to pay him for the automobile and to take the car in the condition it was after the accident.

Mr. Ray White testified:

"I am service manager of the Wall Motor Company. On body and fender work, I do the bidding and take in the jobs. Up until about three years ago I helped on the actual work. I am now supervisor of that work.

"Yesterday I saw the Frazer car of Ralph McAlister which was damaged a year ago and which is now located in the Harvey McNown yard. I made an estimate of the cost of repairing that car. In making an itemized estimate, I figured the cost of the parts and the labor as of September, 1950. My estimate is $703.96. If everything is put on the car that I have listed, it would be just as good as it was before the accident."

As to how the accident happened, plaintiff testified that he was driving south on the country road; that he was thoroughly familiar with the vicinity and of the fact that the private road from defendant's place came out into the country road; that from about 300 feet north of the place of the collision the road was on a downgrade; that the weeds and brush along the side of the road to his right prevented him from seeing defendant's car coming out toward the road; that his speed at that time was between 30 and 35 miles; that he was looking directly down the road and did not watch the private road of defendant, assuming, as he thought he had a right to do, that no one would drive out of the private road onto the country road without being assured that no car was coming from either direction; that he did not see defendant's car until he was about a car length from it and had no time to stop or turn to the left.

Defendant testified that as he drove his car out into the country road he looked to his right and was just turning to look to his left when he saw plaintiff's car so close to his that he had no time to stop his car and prevent the accident.

It developed in the examination of defendant that plaintiff was his uncle. Counsel for defendant contended that he had told them a somewhat different story than he testified to, and on discovering this relationship the defendant's counsel *"advised the Court that the further defense of the suit was under a full reservation of the rights of the Connecticut Indemnity Company under its policy of insurance, and claimed the privilege of interrogating the defendant as an adverse witness because of surprise."* The court gave them permission to do so. But this cross examination did not change defendant's testimony. He did state that it did not matter to him if plaintiff recovered since he would not have to pay it personally.

We turn now to the legal questions presented. It is clear the trial court was not satisfied with the verdict returned by the jury and did not approve it, but reduced it in the sum of $1,605. That was done without complying with that portion of our statute (G. S. 1949, 60-3004) which reads:

". . . In cases tried by a jury the court, with the consent of the prevailing party, may reduce the verdict by such part as is not warranted by the evidence and render judgment for the residue, or grant a new trial when justice requires it. . . ."

Obviously, plaintiff did not consent to this reduction of the verdict, for he filed a cross appeal to that portion which reduced the

general verdict $1,105. He did not cross appeal on that part of the reduction of the verdict as to the damages to the automobile of $500, which indicates, perhaps, he did not object to that. But there is nothing in the record otherwise that he consented to any part of the reduction of the verdict. We think the judgment as rendered cannot stand. We think it clear from this record that the jury did not give proper consideration to this case. For example, it was stipulated by the parties that the hospital bill of $162.94 and the surgeon's bill of $262.50 were fair and reasonable charges for the services rendered plaintiff. The sum of those figures is $425.44. The jury allowed for those items $420, which appellant does not complain about, but it does evidence a lack of care on behalf of the jury. We find no evidence in this record to justify any sum for loss of earnings, which the jury fixed at $1,800. Plaintiff's testimony was that he continued to buy cattle as he had done before; that in fact he had bought 140 to 150 head following this accident in 1950. At the time of the trial he had 230 head on hand, which was about the usual number. The damage to the automobile of $1,885 allowed by the jury was not justified. The only evidence as to the cost of repairs to put the automobile in as good condition as it was before the accident was that the cost of the repairs would be $703.96. That was the only sum that should have been allowed for the damages to the automobile. Plaintiff was not justified in having it taken into the barnyard of the defendant and leaving it stand there. The amount allowed for permanent injury appears excessive in view of the fact that the surgeon who treated him placed plaintiff's disability at only five percent and said it would not have been that much if plaintiff had followed his instructions.

In this court counsel for the plaintiff do not press his cross appeal and say they are willing to accept the judgment finally rendered in the district court of $7,500. Obviously that is too high by as much as $2,500. It is the judgment of this court that it should not exceed $5,000. Since perhaps the result would be in favor of plaintiff on a new trial it is the judgment and order of this court that if plaintiff consents to a remittitur of $2,500 of the judgment rendered, and so advises this court within fifteen days after our opinion is handed down, the judgment of the trial court will be affirmed in the sum of $5,000. If this remittitur is not consented to in writing and filed with our clerk within the time above named the judgment of the trial court will be reversed and a new trial directed. It is so ordered.