## HOMER M. IZUMI AND MAY IZUMI *v.* KWAN DOO PARK, ALSO KNOWN AS K. D. PARK.

### No. 4077.

MARCH 9, 1960.

TSUKIYAMA, C. J., WIRTZ, LEWIS, JJ., CIRCUIT JUDGE ALLEN R. HAWKINS IN PLACE OF MARUMOTO, J., DISQUALIFIED, AND CIRCUIT JUDGE RONALD B. JAMIESON IN PLACE OF CASSIDY, J., DISQUALIFIED.

OPINION OF THE COURT BY WIRTZ, J.

This case involves a controversy between the owners, plaintiffs-appellees, and the architect, defendant-appellant, arising out of the construction of plaintiffs' home at 2675 Aaliamanu Place in Honolulu in 1952. As a result of a

disagreement between the parties over the finished product, plaintiffs, on December 5, 1955, filed a complaint against defendant for damages. The basis of the claim of plaintiffs against defendant as presented to the jury under the complaint in its final form was "that the plans and specifications that defendant prepared were faulty and defective; that thereafter defendant failed to adequately supervise the execution of the plans and specifications and the construction of said building resulted in cracked ceilings, walls and floors; * * *" The issue of malice or wrongful conduct of defendant, as originally claimed, was not before the jury. The verdict of the jury in the amount of $18,000 was for special damages to the exclusion of any punitive or exemplary damages.

Defendant is an architectural engineer and in 1952, at the request of plaintiffs, agreed to design and supervise the construction of a house for them. After the parties had discussed various building plans and materials, defendant designed the home to be built on a "floating foundation." The house construction was to be similar to a box in that the floor, walls and ceiling acted as a unit, thereby minimizing stresses, and the foundation merely rested on the ground without any piers or pilings. The land on which the house was built was in the Makiki Heights section of Honolulu and contained black sand or volcanic cinders. It was situated on a slope which necessitated cutting a portion and filling in a portion in order to level off the lot for building purposes.

The construction contract was given to Philip Minn. Construction commenced in April, 1952. Plaintiffs moved in on October 14, 1952.

Towards the end of the building period, plaintiffs began complaining that there were cracks in the structure. Defendant inspected the building and assured plaintiffs that these were merely "shrinkage" cracks which were

to be expected in any concrete construction. Nonetheless, plaintiffs said they would not make the final payment since they did not approve of the work. Defendant then talked to the contractor and had him issue plaintiffs a guarantee to cure all defects which might arise, due to failure of compliance with the plans and specifications, within one year following the date of completion. Thereupon, defendant issued an architect's certificate of completion. However, plaintiffs never accepted or took advantage of the contractor's guarantee. Plaintiffs still refused to make the final payment. On February 10, 1954, a compromise settlement was entered into between plaintiffs and the contractor in which plaintiffs expressly reserved their rights against defendant.

In 1953, plaintiffs called in John Hansen, a retired contractor, to examine the house. He found cracks in some of the walls and the lanai slab. Pursuant to his advice, plaintiffs had piers placed under the foundation, plastering and painting done to the walls and electrical connections changed at a cost of $2,439.42.

Shortly after the commencement of and during the trial in 1957, plaintiffs called in Herbert P. Beyer, an architect, to examine the premises. He asserted that the building contained what he characterized as structural defects. He presented an estimate that repairs would run to $15,633. Some of the repairs recommended by Beyer exceeded the original specifications; others duplicated the work done under Hansen's direction.

Defendant testified that he inspected the house during the course of the trial and found some structural cracks which were not present in 1952. His opinion was that the cracks were caused by the placing of piers under one end of the floating foundation thus hindering the floating action of the original design, preventing settling of the foundation as a unit.

The contractor testified that the house was completed in accordance with the plans and specifications and that there were no defects which could not have been repaired within a year's time.

The jury, by its verdict, necessarily found negligence on the part of defendant in the matter of design or in his failure to properly supervise the construction, or both. It is conceded that the evidence supports this finding of liability of defendant under the complaint, as finally amended. No question has been raised on appeal as to the sufficiency of the complaint, the sufficiency of the evidence to support the jury's finding of liability or the instructions of law given to the jury. Under his specifications of error, defendant relies on certain procedural errors resulting in an excessive verdict as well as the excessiveness of the verdict itself. We deem it unnecessary to consider the first six specifications of error relied upon by defendant but will concentrate on the crux of the case as set forth in the seventh specification of error.

Defendant's motion for new trial specified as one of the grounds therefor that "[The] verdict cannot be supported by the evidence." Defendant advances this same ground on this appeal. Specifically, he contends that "[the] damages awarded by the jury were in excess of that which the evidence allowed even if considered in the light most favorable to the [plaintiffs]."

Ordinarily, an appellate court will not disturb a verdict for excessiveness. *Cf.*, *Vasconcellos* v. *Juarez*, 37 Haw. 364; *Coney* v. *Lihue Plantation Co., Ltd.*, 39 Haw. 129; *Ginoza* v. *Takai Elec. Co.*, 40 Haw. 691. However, it will act where the damages awarded exceed the maximum which the evidence allows. "The rule that the court will not ordinarily interfere with the verdict of a jury on the ground that it is excessive does not apply in cases where the damages may be measured with some degree of cer-

tainty or are capable of ascertainment by calculation; and where a fixed standard or scale by which damages may be calculated exists, a jury will not be permitted to depart from it." 15 Am. Jur., *Damages,* § 205, p. 624. As to the scope of review, Corpus Juris Secundum states this exception to the general rule this way: "* * * A verdict will be set aside by an appellate court as excessive where * * * the verdict must of necessity have been for a smaller sum than that awarded; * * *" 5A C.J.S., *Appeal and Error,* § 1651(b), pp. 398, 399. And this court, in *Pooler* v. *Stewarts' Pharmacies, Ltd.,* 42 Haw. 618, at p. 622, quoted with approval from Moore's *Federal Practice:* "* * * Thus, where the verdict * * * is more or less than an undisputed amount, is less than an admitted minimum amount, or is more than an admitted maximum amount, or where the excessiveness or inadequacy is apparently due to other legal error committed at the trial * * * a failure of the trial court to grant appropriate relief on the motion for a new trial will be considered an error of law and the appellate court will order a new trial. * * *"

The paucity of cases on this point bespeaks the fundamental nature of the rule. In *Jones* v. *Vanzandt,* 2 McLean 611, Fed. Case 7,502, it was urged that "the damages are excessive." Under the evidence, certain expenses incurred by plaintiff could not have exceeded $600, but the jury returned a verdict for $1,200. In setting aside the verdict, the court stated that the items claimed: "* * * do not, from the evidence, exceed six hundred dollars, and, as the verdict rendered was for twelve hundred dollars, I feel bound to set aside the verdict." (p. 632.)

In *Fury* v. *Merriman,* 45 Mo. 500, it appeared that the evidence could only warrant a verdict for a certain sum, but the jury returned a larger sum. In reversing, the court held that it did not conflict with the rule that an appellate court should not disturb a verdict when there is evidence

to sustain it, for here the evidence could warrant a verdict only for the smaller sum.

The evidence here, even if considered in the light most favorable to the plaintiffs, shows a maximum amount of damages several thousand dollars below that awarded by the jury. This excessiveness is a matter of mathematical certainty.

The plaintiffs' duty to minimize damages is elementary. 15 Am. Jur., *Damages*, § 40, p. 439; 25 C.J.S., *Damages*, § 35, pp. 506, 507. Although the trial court in the case at bar instructed the jury to consider this basic principle, which instructions were given by agreement, they were apparently ignored. The plaintiffs' damages, after the lapse of five years were greatly increased by higher building costs. No allowance was made for this increase in cost although the evidence disclosed it to be at least 20% more in 1958 than it would have been when plaintiffs made their initial repairs in 1953. It has been contended that plaintiffs did not have the duty to make the large expenditures here involved in advance of suit. But plaintiffs' instruction number four, mutually agreed upon as modified, specified that the amount of damages was to be measured by the reasonable cost "within a reasonable time after discovery." This became the law of the case, and is to be, as it should have been by the jury, applied to the only evidence in the record concerning increased construction costs and which could have allowed a determination of the reasonable cost "within a reasonable time after discovery." This was Mr. Beyer's opinion that "there has been at least a 20% increase in building costs since that time [the end of 1952 or the beginning of 1953]." Nor is this cost differential disputed, but rather it was urged by defendant in his briefs and argument.

Also, in Hawaii, the measure of damages in building contracts is generally the cost of correction. *Ritchey* v.

*Sato,* 39 Haw. 500. *Cf.,* Annotation, 123 A.L.R. 520. However, such cost is limited to correction according to the original plans and specifications, if adequate. *Steffen* v. *United States,* 213 F. 2d 266; *Otto Misch Co.* v. *E. E. Davis Co.,* 241 Mich. 285, 217 N.W. 38; *Schmunk* v. *Berkey Housing Development Corp.,* 2 A.D. 2d 736, 152 N.Y.S. 2d 357; *Ciminelli* v. *Umland Bros.,* 236 A.D. 154, 258 N.Y.S. 143. Here, the estimate of future repairs, as well as those previously paid for by the plaintiffs, contemplated "repairs" which were not called for in the plans and specifications. Some of these repairs, however, were necessary to cure what the jury could have regarded as structural defects resulting from inadequacies in the plans and specifications relative to the foundations.

The damages awarded in this case exceeded those which were fair and adequate, even if plaintiffs' proof were given the benefit of every doubt. The maximum sum of $18,072 under plaintiffs' evidence, based upon plaintiffs' expenditures and estimate, should have been reduced by the sum of $100 for fees admittedly owed defendant. Also, the sum of $1,000 deducted from the final payment to the contractor in lieu of repairing the then apparent defects and of the contractor's guarantee, should have been credited against the award. These items alone show that the "verdict cannot be supported by the evidence."

There remains to consider plaintiffs' evidence as to the amount of the repair work paid for but which will have to be redone under the estimate, and to exclude therefrom the items which contemplate repairs beyond the plans and specifications where the same are not necessary to rectify structural defects traceable thereto. This result then must be adjusted to the proper cost level.

We feel that the jury's finding of liability, which we cannot disturb, indicates in part defective plans and specifications insofar as the foundations were concerned, justi-

fying the allowance of items necessary to cure structural defects. We also feel that the settlement made by plaintiffs with the contractor by which $1,000 was deducted from the final payment was in lieu of the proffered guarantee and eliminates consideration of any amounts plaintiffs could have saved by using the contractor's guarantee which had never been accepted. There were circumstances to show that the rejection of this guarantee, in the form rendered was prudent.

We consider first the costs incurred by plaintiffs in 1953 when the initial repairs were made. Piers or pilings were put in to halt the settlement process of the building. No such piers or pilings were contemplated by the plans and specifications. The jury, however, in the face of conflicting expert testimony accepted the view, by its verdict, that they were necessary. However, the installation of these piers or pilings will have to be duplicated on the basis of the estimate for future repairs, and so their cost cannot be properly considered here. This item amounted to $423.14. The replastering of the exterior of the building and requisite electrical work, while not called for in the plans and specifications, became a necessary item of repairs due to the presence of structural cracks in the walls.

In the estimate given for necessary repairs to be made, the only apparent questionable item, insofar as the plans and specifications are concerned, was the repairs to be made to the roof. It was unnecessary to repair the roof, in the light of the testimony. Deducting this item would reduce the estimate of future necessary repairs by $1,089. The adjusted estimate of future repairs to conform to building costs prevailing in 1953 would then be $12,120. Such consideration of change in construction costs is proper in view of the rule of minimization of damages and the instructions given by the trial court. *Cf., Smiley*

v. *St. Louis-San Francisco Ry. Co.*, 359 Mo. 474, 222 S.W. 2d 481; *Counts* v. *Thompson*, 359 Mo. 485, 222 S.W. 2d 487; and see Annotation, 12 A.L.R. 611.

In this case, where the specifications of error are directed to procedural errors, all leading to an excessive verdict, as well as to the excessive verdict itself, and the amount of such excessiveness can be readily ascertained with reasonable mathematical definiteness, it is proper to grant a new trial unless the plaintiff consents to a remittitur large enough to reduce the verdict to the lowest amount that the court would be willing to sustain. *Hulett* v. *Brinson*, 229 F. 2d 22; *Boyle* v. *Bond*, 187 F. 2d 362; *United States* v. *Certain Parcels of Land, Etc.*, 149 F. 2d 81; *United States Potash Co.* v. *McNutt*, 70 F. 2d 126; *Becker Bros.* v. *United States*, 7 F. 2d 3; *Kimball* v. *Antigo Bldg. Supply Co.*, 261 Wis. 619, 53 N.W. 2d 701; *Brady* v. *Central Excavators, Inc.*, 316 Mich. 594, 25 N.W. 2d 630; *Cf., Railroad Co.* v. *Himrod Furnace Co.*, 37 Ohio State Reports 434; *Cf., Arkansas Cattle Co.* v. *Mann*, 130 U.S. 69; *Cf., Placella* v. *Robbio*, 47 R.I. 180, 131 Atl. 647; *Cf., Weatherspoon* v. *Stackland*, 127 Ore. 450, 271 Pac. 741; *Cf., Vacuum Oil Co., Inc.* v. *Smookler*, 282 Mass. 361, 185 N.E. 13.

Remittitur in order to save vexatious expenses and prolonged litigation is justified in proper cases. It is said that the proper exercise of this power does not involve the substitution of the court's judgment for that of the jury, or amount to a usurpation of the province of the jury. Generally the appellate court will not order a remittitur unless it clearly appears that the verdict was excessive and as a general rule the amount of the excess must clearly appear from the record. "The power of the reviewing court, in proper cases, to order or require a reduction or remission of the amount recovered as a condition of affirming a judgment, or of denying the reversal of a

judgment which is excessive, is quite generally recognized." 3 Am. Jur., *Appeal and Error,* § 1173, p. 682.

"* * * [Where] the only error in a judgment is that the amount of recovery is excessive, and the excess may be so segregated that the court can distinguish and separate the erroneous part, or the excess is capable of correction by computation, common practice is either to permit the party recovering the excessive judgment to file a remittitur in the appellate court and affirm the judgment as modified, or, which amounts in effect to the same, to give him leave to file the remittitur in the trial court and direct the entry of judgment for the modified amount, instead of reversing judgment and ordering new trial." 3 Am. Jur., *Appeal and Error,* § 1174, p. 683; *Cf., Fisch* v. *Manger,* 24 N.J. 66, 130 A. 2d 815; *New Hampshire Fire Ins. Co.* v. *Curtis,* 264 Ala. 137, 85 So. 2d 441; *Moore* v. *Schank,* 148 Neb. 228, 27 N.W. 2d 165; *Musser* v. *Swift & Co.,* 75 Idaho 1, 265 P. 2d 661; *McAlister* v. *McNown,* 174 Kan. 608, 258 P. 2d 309; *Roby* v. *Auker,* 151 Neb. 421, 37 N.W. 2d 799.

Hawaii has long recognized the doctrine of remittitur. *Bartlett* v. *Hawaiian Carriage Manufacturing Co.,* 13 Haw. 311; *Reinhardt* v. *County of Maui,* 23 Haw. 524; *Young* v. *Wong Ming,* 35 Haw. 685.

The Supreme Court of the United States in *Hansen* v. *Boyd,* 161 U.S. 397, has said:

"The rule has been adopted by this court that it is proper, either for the trial court upon an application for a new trial, or for an appellate court in reviewing a judgment, to permit the party, in whose favor a verdict or judgment has been returned or entered, to avoid the granting of a new trial on account of error affecting only a part thereof, by entering a remittitur as to such erroneous part, when the court can clearly distinguish and separate the same." (p. 411.)

Consideration was given to limiting the new trial to the issue of damages solely, but it was felt that this was not a proper case in that the issue of damages is not clearly severable from the other issues.

If the plaintiffs will remit the sum of $4,963.20, being the sum of the items that should have been credited to defendant by the jury, within ten days from the filing of this opinion, the judgment will be affirmed as of the date of its rendition for the sum of $13,036.80; otherwise the judgment will be reversed, and the cause remanded for a new trial.

*Arthur B. Reinwald* (*Thomas M. Waddoups* and *Robertson, Castle & Anthony* with him on the brief) for appellant.

*Kenneth E. Young* (also on the brief) for appellees.