**ANCHORAGE ASPHALT PAVING COMPANY, an Alaska Corporation, Appellant,**

v.

**J. R. LEWIS, d/b/a Four Seasons Mobiland, Appellee.**

No. 5055.

Supreme Court of Alaska.

June 5, 1981.

Robert C. Erwin, Erwin, Smith & Garnett, Anchorage, for appellant.

Raymond A. Nesbett, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and BLAIR, Superior Court Judge.

MATTHEWS, Justice.

This is the third time the parties in this case have appeared before this court.[1] The present issues on appeal concern the damages awarded J. R. Lewis. Specifically, appellant, Anchorage Asphalt, contends that the trial court erred in valuing Lewis' damages as of the time of the third trial rather than the date of breach, that the award unjustly enriches Lewis because he failed properly to maintain the roads in question, and that the award of prejudgment interest computed on the 1979 valuation of damages constitutes a double recovery.[2] We reject the first two claims of error and accept the third.

In 1969, appellee, Lewis, contracted with Anchorage Asphalt to pave seven roads in his mobile home park, the Four Seasons Mobiland. The roads began to deteriorate soon after the paving was completed and after April 1970, Lewis discontinued payments on the paving contract, having paid a total of $30,000.00. The contract price was $57,052.50.

Anchorage Asphalt sued on the contract and Lewis counterclaimed for breach of contract. On the second appeal, this court ruled that Anchorage Asphalt was liable for the pavement failure due to its failure to warn Lewis of the inadequacy of the pavement subsurface and remanded the case for a determination of damages. *Lewis v. Anchorage Asphalt Paving Company*, 579 P.2d

532, 535 (Alaska 1978). Damages were to be determined according to the formula established by this court on the first appeal:

> If the court below reaches the issue of damages, they should be limited to those necessary to put Lewis in as good a position as that in which he would have been had such warning been given. Restatement of the Law, Contracts, § 329, Comment a, page 504. Since we have affirmed the trial court's finding that "preparation of the subgrade" involved only its "grading, shaping and compacting," damages should not include the costs of excavation and filling, but only the costs of removing the portions of paving that have failed, shaping and compacting the subgrade and replacing that pavement. The amount due and unpaid on the contract will be an offset against those damages, and if the amount due and unpaid exceeds the amount of the damages, Anchorage Asphalt will be entitled to an award for the difference.

*Lewis v. Anchorage Asphalt Paving Company*, 535 P.2d 1188, 1200 n. 31 (Alaska 1975).

At the third trial, Lewis introduced expert testimony that of the total pavement area of 205,464 square feet, 105,474 square feet had failed and needed reconstruction or patching. Total reconstruction would, naturally, give the best result. Bids were introduced from four paving companies on the cost of total reconstruction during the summer of 1979. Using the lowest of these bids, Lewis' expert stated it would cost $114,987.00 to reconstruct and patch the road, to achieve a "good result." The trial court accepted this testimony and awarded damages of $114,987.00. From that amount, the court deducted $28,757.29 which Lewis still owed Anchorage Asphalt on the contract,[3] netting a damage recovery by Lewis of $86,229.71. The court also

---

1. *See Lewis v. Anchorage Asphalt Paving Co.*, 579 P.2d 532 (Alaska 1978) and *Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188 (Alaska 1975) for the procedural and factual history of this case.

2. Anchorage Asphalt also claims that the attorney's fees awarded were improper in that they

were computed on the improper assessment of prejudgment interest.

3. This sum includes the principal owed on the contract plus interest on that principal until April 9, 1970.

awarded prejudgment interest on the full amount of the damages from April 9, 1970, plus costs and attorney's fees.

## I. THE DATE OF THE DAMAGE VALUATION.

Anchorage Asphalt contends that the proper time to value damages is at the time of breach or a reasonable time thereafter, and the 1979 valuation used by the trial court was thus error. First, it should be noted that in accordance with the measure of damages mandated by this court, "damages should be the reasonable cost of completion in accordance with the contract specifications." *Lewis v. Anchorage Asphalt Paving Company*, 535 P.2d at 1200 n. 31; *Davis v. McCall*, 568 P.2d 956, 959 (Alaska 1977). The purpose of this rule is to grant the plaintiff what he bargained for under the contract.

 As a general rule in contract actions, the date of breach affords the most appropriate time for valuing damages.[4] However, this is not a rule to be applied inflexibly when it undermines the remedial goals of a damage award.[5]

 A case such as the one at bar, where litigation has been protracted over the length of a decade and the appropriate remedy is the cost of repair, presents a situation where limiting the plaintiff to the time of breach cost or repair has the potential of subverting the remedial purposes of the damage award. Simply put, where inflation has eroded the time of breach monetary valuation of an injury to a fraction of what is required to remedy the plaintiff's injury, then the time of breach rule may be regarded as inappropriate. Because the circumstances of individual cases differ drastically, it is impractical to adopt a definite point in time to value damages. It has been found preferable to leave the question to the trial court's discretion.[6] *Fairway Builders, Inc. v. Malouf*, 124 Ariz. 242, 603 P.2d 513, 526 (Ariz.App.1979); *see* Restatement of Contracts § 329, Comment a (1932).

 In this case, in view of the substantial inflation which took place between 1972, when the full extent of the breakdown of the streets became apparent, and the time of the trial in 1979,[7] we cannot say that the court abused its discretion using 1979 as the date of damage valuation.

 In reaching this conclusion we necessarily reject a suggestion not directly made by Anchorage Asphalt, but contained in some of the cases it has cited, that one may be guilty of an unreasonable failure to minimize costs which have increased due solely to inflation.[8] This question has not been frequently addressed by American courts, and those authorities that exist are divid-

---

4. *See* C. McCormick, Law of Damages, § 48 at 184–85 (1935); 5 A. Corbin, Contracts § 1005 at 53 (1964).

5. As Professor Corbin states:

 The rules of law governing the recovery of damages for breach of contract are very flexible. Their application in the infinite number of situations that arise is beyond question variable and uncertain. Even more than in the case of other rules of law, they must be regarded merely as guides to the court, leaving much to the individual feeling of the court created by the special circumstances of the particular case. [Footnote omitted]

 A. Corbin, *supra* note 4, § 1002 at 33. *See* Restatement of Contracts § 329, Comment a (1932).

6. A discretion which should be exercised to achieve the remedial goals of a contract remedy, *see* note 5 *supra*.

7. According to the Bureau of Labor Statistics, United States Department of Labor, the Anchorage Consumer Price Index for October 1972 was 116.9; it had increased to 211.4 as of October of 1979, reflecting an inflation rate over the period of approximately 81%. This far outstripped the allowable rate of prejudgment interest which was 6% until September of 1976 and thereafter 8% for a total prejudgment increase of approximately 48%.

8. The apposite cases cited by Anchorage Asphalt are: *Universal Towing Co. v. United Barge Co.*, 579 F.2d 1098, 1104 (8th Cir. 1978); *Izumi v. Kwan Doo Park*, 44 Haw. 123, 351 P.2d 1083, 1086–87 (1960); *Calais v. Dura-White Roofs, Co.*, 208 So.2d 397 (La.App.1968); *cert. denied*, 252 La. 174, 210 So.2d 55 (1968); *Gaylord Builders v. Richmond Metal Mfg. Corp.*, 186 Pa.Super. 101, 140 A.2d 358, 360 (1958).

ed.[9] We believe that the better view is that there is no duty to take action simply to avoid an increase in costs due solely to inflation because such an increase is not a real increase in cost to the defendant, who will be paying the award with money which has also decreased in value. Including a rise in costs due solely to inflation within the duty to minimize damages simply means that the claimant rather than the wrongdoer must bear the risk of inflation. Since this allows the wrongdoer to gain by delaying payment, where allowable prejudgment interest is exceeded by inflation, we see nothing to recommend it.

## II. LACK OF MAINTENANCE AND UNJUST ENRICHMENT

■ Anchorage Asphalt argues that Lewis should have done more maintenance to the roads for the nine years preceding trial than he did, contending that this substantially contributed to the pavement failure found by the trial court. This argument is a factual one. It was implicitly rejected by the trial court which found that "the roads began to breakup and fail immediately after the performance of the paving contract" and that the damages it assessed were only those "which do in fact place J. R. Lewis in that position he would have been in had the contract been properly performed." These findings are supported by the testimony of Lewis' witnesses; we are unable to say that they are clearly erroneous; and therefore they will not be disturbed on appeal. Alaska Rule of Civil Procedure 52(a).

■ Anchorage Asphalt also contends that the failure of Lewis to perform sufficient maintenance effected a savings to him, resulting in unjust enrichment. However, the court did not find that Lewis'

maintenance had been inadequate and such a finding was not compelled by the evidence presented. Therefore this approach, too, is without merit.

■ Finally, Anchorage Asphalt suggests that Lewis had ten years of use of the paved roads, and that, even though the roads may have been defective, some recognition of this beneficial use should have been reflected in the damage award. We reject this argument because the court found that Lewis' use of the paving was not beneficial, stating, "any benefit to J. R. Lewis from the pavement is more than offset by the expense and inconvenience of the alligatoring, pot holes and pavement failure during the course of this litigation." This finding, supported as it is by credible evidence, is not clearly erroneous, and, therefore, may not be set aside. Alaska Rule of Civil Procedure 52(a).

## III. PREJUDGMENT INTEREST

Anchorage Asphalt urges that the award of prejudgment interest from April 9, 1970, to the date of judgment in the damage award is improper. We agree and reverse the trial court on this point.

■ One purpose of prejudgment interest is to compensate the plaintiff for the loss of use of money from the date of injury until the date of judgment. *City and Borough of Juneau v. Commercial Union Insurance Company*, 598 P.2d 957, 959 (Alaska 1979); *Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973). A corollary purpose is to deprive the defendant of unjust enrichment resulting from the use of the money from the date of injury, thereby encouraging settlement. *Drickersen v. Drickersen*, 604 P.2d 1082, 1087 n. 8 (Alaska 1979); *State v.*

9. Cases indicating no duty to mitigate include: *Fairway Builders, Inc. v. Malouf*, 124 Ariz. 242, 603 P.2d 513, 525–26 (Ariz.App.1979); *Camrosa County Water Dist. v. S.W. Welding & Mfg. Co.*, 49 Cal.App.3d 951, 123 Cal.Rptr. 93 (1975). *See also Leslie Salt Co. v. St. Paul Mercury Ins. Co.*, 637 F.2d 657 (9th Cir. 1980); *Beik v. American Plaza Co.*, 280 Or. 547, 572 P.2d 305, 310–11 (1977). Cases suggesting a duty to mitigate include, in addition to those cited in

note 8 *supra, Jewell v. Jackson & Whitsitt Cotton Co.*, 331 So.2d 623, 626 (Ala.1976); *Lake Region Paradise Island, Inc. v. Graviss*, 335 So.2d 341 (Fla.App.1976); *United Va. Bank v. Dick Herriman Ford, Inc.*, 215 Va. 373, 210 S.E.2d 158, 161 (1974). The position that the duty to mitigate should not extend to price increases caused by inflation is persuasively set out in D. Feldman & D. F. Libling, Inflation and the Duty to Mitigate, 95 Law Q.Rev. 270 (1979).

*Phillips,* 470 P.2d 266, 273 n. 27 (Alaska 1970). But prejudgment interest should not be awarded where it would work an injustice. *Haskins v. Shelden,* 558 P.2d 487, 494–95 (Alaska 1976); *State v. Phillips,* 470 P.2d at 274.

Lewis does not argue that the award is justified under these established rules. Instead he attempts to justify the award of prejudgment interest as compensation for extraordinary maintenance expenses incurred and lost profits suffered as a result of the defective roads under the rationale of § 331(2) of the Restatement of Contracts (1932):

> Where the evidence does not afford a sufficient basis for a direct estimation of profits, but the breach is one that prevents the use and operation of property from which profits would have been made, damages may be measured by the rental value of the property or by interest in the value of the property.

This ground for affirmance is unavailable to Lewis.

■ First, Lewis concedes in his brief that no attempt was made at trial to establish or recover extraordinary expenses or lost profits at trial. Nor were they raised in Lewis' pleadings. Special damages, such as lost profits, must be pleaded, to give the other party notice of damages which are not necessarily to be expected from the particular breach. C. McCormick, Law of Damages § 8 at 37 (1935). Failure to raise the issue of lost profits in the pleadings and at trial precludes its consideration on appeal.

■ Second, damages such as extraordinary maintenance costs are generally capable of proof. Lewis testified that he was not claiming damages for extraordinary repair costs other than certain asphalt purchases. The sudden resurrection of these unquantified expenses on appeal is not a persuasive rationale for the award of prejudgment interest.

■ The award of damages at 1979 values suffices, in our view, to give Lewis what he initially bargained for, an acceptable paved road system. Ordinarily his award would be his cost of repair at or near the time of the breach, plus prejudgment interest up to the time of trial. Here, for the reasons previously explained, the court was justified in deviating from this standard method. However, to calculate the cost of repair at 1979 values and award prejudgment interest on that from 1970 strikes us as an unwarranted and unjustifiable compounding of damages.

■ It is necessary to award Anchorage Asphalt prejudgment interest on the $28,757.29 which Lewis still owes on the paving contract.[10] Prejudgment interest should be calculated from May 1970, when Lewis' next payment was due until September 12, 1976, at six per cent interest, and at eight per cent interest from then until the date of judgment. *Drickersen v. Drickersen,* 604 P.2d at 1087; *City and Borough of Juneau v. Commercial Union Insurance Company,* 598 P.2d at 959.

■ Because the amount of Lewis' award has been reduced, attorney's fees should be recomputed accordingly.

The case is AFFIRMED in part; REVERSED in part; and REMANDED to the trial court to issue an order in accordance with this opinion.

---

**10.** This amount was implicitly awarded to Anchorage Asphalt when the trial court setoff the contract sum owed by Lewis from his recovery and then awarded prejudgment interest on the net recovery.