Carlos S. **Camacho,**
Plaintiff/Appellee,

v.

**L & T International Corporation,**
Defendant/Appellant.
Appeal No. 94-050
Civil Action No. 93-0820
February 9, 1996

---

[3] *Id.*

Argued and Submitted January 17, 1996

Counsel for appellant: Steven P. Pixley (Law Offices of Robert J. O'Connor), Saipan.

Counsel for appellee: Douglas F. Cushnie, Saipan.

BEFORE: TAYLOR, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

VILLAGOMEZ, Justice:

■ The appellant, L & T International Corporation ("L & T"), appeals the Superior Court's entry of summary judgment and award of damages in favor of the appellee, Carlos S. Camacho ("Camacho"), in an action arising from a lease agreement.

We have jurisdiction under 1 CMC § 3102(a). We reverse as to one issue and affirm as to the other four.

### ISSUES & STANDARDS OF REVIEW

L & T raises five issues for our review:

■ I. Whether the Superior Court erred in denying L & T's counterclaim for restitution because it was based on erroneous findings of fact. We review the trial court's decision not to award restitution for an abuse of discretion.[1] The underlying findings of fact are reviewed under the clearly erroneous standard. Thus, we will not reverse unless, after reviewing all the evidence, we are left with a firm and definite conviction that a mistake has been made.[2]

■ II. Whether the award of $10,000 to reconvert the barracks to a theater, as damages for waste, was erroneous because it was based on a misconstruction of the lease agreement. A written lease is a contract,

---

[1] *Rosario v. Quan*, 3 N.M.I. 269, 280-81 (1992).

[2] *Pangelinan v. Itaman*, 4 N.M.I. 114, 120 n.33 (1994).

subject to the same rules of construction as contracts.[3] We review the application of contract law under the de novo standard, and any findings based on extrinsic evidence under the clear error standard.[4]

■ III. Whether the Superior Court erred in awarding compensation for unreturned personal property by basing the award on the property's 1987 value, rather than its 1993 value. The time as of which property is valued for purposes of determining damages for breach of contract is within the discretion of the trial court.[5] We review such awards, therefore, to determine whether there has been a manifest or gross abuse of discretion.[6]

■ IV. Whether the Superior Court erred in finding that L & T was an improper holdover tenant. This is a mixed question of law and fact reviewable de novo.[7]

■ V. Whether the attorney's fees related to: (a) L & T's counterclaim and termination of the lease should be stricken because they are not provided for in the lease; and (b) waste and unlawful detainer should be stricken because they are based on the trial court's erroneous holdings. We review de novo the Superior Court's construction of the attorney's fees provision of a lease.[8]

### FACTUAL & PROCEDURAL BACKGROUND

Camacho leased to L & T a lot in Garapan, Saipan, on which stood a movie theater, for a ten-year period beginning on July 1, 1983, for $2,021 per month. The lease agreement contained an option to renew for an additional five years. To exercise the option, L & T had to give notice one year in advance of the expiration of the lease.

The lease also covered certain personal property, such as theater equipment. The terms of the lease obligated L & T either to purchase or return to Camacho any personal property that it decided not to use.

L & T operated the movie theater until Typhoon Kim damaged it 1986. At that point, L & T converted the theater into barracks. Camacho was aware of this conversion and had the new barracks inspected by his engineer. During the spring of 1992, L & T renovated and improved the barracks at a cost of approximately $43,000.

On February 20, 1993, L & T sent Camacho a letter giving notice that it was exercising its option to renew the lease. Camacho received the letter on March 4, 1993, eight months past the one-year deadline specified in the lease.

On July 13, 1993, Camacho sued L & T, seeking a declaration that the lease had expired, damages for unlawful detainer, and attorney's fees. L & T counterclaimed for restitution based on the improvements it had made in renovating the barracks in 1992.

In October 1993, the Superior Court granted Camacho partial summary judgment, concluding that L & T gave its renewal notice too late and, therefore, failed to exercise its option. The court declared the lease to have expired on June 30, 1993, and ordered L & T to vacate the premises. L & T vacated the premises in December 1993, six months after expiration of the lease.

In September 1994, Camacho filed a supplemental complaint seeking damages for waste and compensation for the unreturned personal property. Following a hearing in November 1994, the Superior Court denied L & T's counterclaim for restitution, concluding that the $43,000 renovation did not benefit Camacho.

The Superior Court awarded Camacho $10,000 in order to reconvert the barracks to a theater. It found that the conversion of the premises to a barracks "rendered the property of no practical use"[9] to Camacho.

The Superior Court also awarded Camacho $18,750 for the personal property that L & T did not return. Additionally, for the six-month period of time that L & T continued to occupy the premises after the lease expired in June 1993, the court awarded Camacho $3,000 per month, for a total of $18,000.

Finally, because Camacho prevailed in the action, the Superior Court awarded him attorney's fees in the amount of $11,229. This amount was based on the

---

[3] *Bates v. Indus. Property Holding Co.*, 318 P.2d 741, 743 (Cal. Ct. App. 1957); *see Borja v. Rangamar*, 1 N.M.I. 347, 356-57 (1990).

[4] *Pangelinan*, 4 N.M.I. at 117.

[5] *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 603 P.2d 513 (Ariz. Ct. App. 1979); *Anchorage Asphalt Paving Co. v. Lewis*, 629 P.2d 65 (Alaska 1981). *Cf. Reyes v. Ebeteur*, 2 N.M.I. 418, 424 (1991) (citing *First Nat'l Bank of Chicago v. Material Service Corp.*, 597 F.2d 1110 (7th Cir. 1979)) (holding that amount of damages assessed by trial court rests on determinations of fact, reviewed under clear error standard).

[6] *Robinson v. Robinson*, 1 N.M.I. 81, 86 (1990).

[7] *Apatang v. Mundo*, 4 N.M.I. 90, 92 (1994).

[8] *Bates*, 318 P.2d at 743; *Borja*, 1 N.M.I. at 356-57.

[9] *Camacho v. L & T Int'l Corp.*, Civ. No. 93-0820 (N.M.I. Super. Ct. Nov. 23, 1994) (order at 2).

statement of fees and costs filed by Camacho's counsel. L & T timely appealed.

## ANALYSIS

### I. Denial of L & T's Counterclaim

L & T claims that Camacho has been unjustly enriched because in regaining possession of the leased premises he received a benefit in the form of "the [$43,000] improvement of the existing barracks." Appellant's Reply Brief at 4. The Superior Court erred, L & T contends, in finding that

> It is clear from the facts of this case that the option was not renewed one year in advance. Instead of defendant trying to iron out that problem with the lessor, the defendant went ahead and converted the theater into a barracks in the middle of a commercial area in Saipan. He did the conversion knowing that the option has not been renewed on time, has not been ironed out, and went ahead and expended roughly $44,000 in converting the theater to a barracks.

Transcript of Proceedings at 184.

L & T does not challenge the Superior Court's finding that it failed to exercise its renewal option on time. Rather, L & T asserts that the Superior Court confused the 1987 conversion of the theater into a barracks with the 1992 renovation of the barracks. L & T bases its counterclaim for restitution on the 1992 renovation, not on the 1987 conversion. As a result of the Superior Court's confusion, maintains L & T, it wrongfully denied L & T's counterclaim. We conclude that the Superior Court did not err.

First, the Superior Court also said "[u]nder these facts, [L & T] assumed the risk of expending [money on] *the renovation* or conversion of the building and that when he comes to court, he may or may not get it back." *Id.* (emphasis added). The reference to the renovation in this statement indicates that, when denying the counterclaim, the court had in mind L & T's 1992 expenditure of about $43,000.

 Second, the factual finding which L & T essentially challenges is that L & T undertook the alteration of the premises at its own financial risk. The terms of the lease agreement and other evidence support this finding.

Paragraph six of the lease provides that

> Lessee shall, *at his own expense*, have the right to make improvements and alterations to the premises. *All* buildings and *improvements*, excluding removable personal property and trade fixtures, on the premises *shall remain on the premises* after the termination of this Lease Agreement and shall become the property of Lessor unless agreed to otherwise in writing by the Lessor.

Lease Agreement at 3, ¶ 6 (emphasis added) *in* Excerpts of Record at 8. L & T renovated the barracks believing that its lease would be renewed. The record on appeal does not show that Camacho induced this belief.[10] L & T, by its own inaction, subsequently failed to renew the lease in a timely fashion.

There is no legal or factual basis to force Camacho to repay L & T approximately $43,000 for renovations authorized by a lease which specifies that such improvements are to be made "at [L & T's] own expense" and are to "remain on the premises."[11] L & T, not Camacho, must bear the consequences of the risk it assumed.

### II. Award of $10,000 to Reconvert the Barracks to a Theater

In his supplemental complaint, Camacho requested compensation for waste allegedly committed by L & T through its alteration of the premises. The Superior Court awarded Camacho $10,000 in damages "to put that building back to its original state as a theater." Transcript of Proceedings at 185. On appeal, L & T challenges the Superior Court's award of damages for waste on the ground that under the terms of the lease as understood by the parties, the alterations made by L & T cannot be characterized as waste. We agree.

---

[10] *See* George W. Thompson, 3 THOMPSON ON REAL PROPERTY § 1140 (Grimes repl. ed. 1959) (where a landlord encourages a tenant to make improvements by leading the tenant to believe that a renewal or extension of the lease will be granted, equity may protect the tenant by granting compensation for the improvements).

[11] *Woodson v. Harris*, 615 So. 2d 93, 94 (Ala. Civ. App. 1992) (the rule that, where one renders valuable services knowingly accepted by another, the law implies an obligation to pay a reasonable value for the improvements, in the absence of express contract, does not apply to improvements on leased land voluntarily made by a lessee).

Under the applicable rule, an impermissible "change in the physical condition of . . . leased property"[12] may constitute waste.[13] Additionally, under certain circumstances, even a permissible change may constitute waste:

> *Except to the extent the parties to a lease validly agree otherwise*, there is a breach of the tenant's obligation [not to commit waste] if he makes permissible changes in the leased property and does not, when requested by the landlord, restore, where restoration is possible, the leased property to its former condition . . . .[14]

Here, although L & T expressly agreed not to commit waste (see Lease Agreement ¶ 12 in Excerpts of Record at 10), the terms of the lease agreement also authorized L & T to use the leased premises "for any lawful purpose." *Id.* at ¶ 2 *in* Excerpts of Record at 7. The lease also entitled L & T "to make improvements and alterations to the premises." *Id.* at ¶ 6 *in* Excerpts of Record at 8. Such alterations, if made, were to "remain on the premises after the termination of . . . [the] Lease Agreement and . . . become the property of [Camacho] unless agreed to otherwise in writing by [Camacho]." *Id.*

The Superior Court stated that Camacho "found out that the theater ha[d] been converted to a barracks." Transcript of Proceedings at 185. The parties do not dispute that the use of the premises as a barracks was lawful, or that conversion of the theater to a barracks was a permissible alteration under the terms of the lease.

The evidence before the Superior Court indicates that, at the time L & T converted the premises, Camacho acknowledged that such an alteration was permissible under the terms of the lease. *See, e.g.*, Letter from Dr. Carlos P. Camacho to Mr. Raymond Tan, L & T International Corporation 1 (Dec. 29, 1986), *in* Supplemental Excerpts of Record at 7. There is no evidence in the record either that Camacho objected to the conversion, or that he requested that the barracks be recon-

verted to a theater, at any time prior to the filing of this lawsuit. Camacho did not communicate to L & T that either the barracks were to be reconverted to a theater prior to the expiration of the lease or L& T was to pay for the reconversion expense subsequent to the expiration.

Under the facts of this case, L & T did not have a duty to restore the premises to their original state as a theater. We hold that the Superior Court erred in concluding that L & T committed waste, within the meaning of the lease agreement, by converting the leased premises from a theater to a barracks, and by not reconverting the premises to a theater.

## III. Valuation of Personal Property

L & T argues that the Superior Court should have based its award of damages for Camacho's unreturned personal property on the property's value in 1993, which is when L & T breached the lease. The Superior Court awarded damages based on the property's value in October 1987, which is when, contends L & T, it converted the theater to a barracks. We find no abuse of discretion.

Camacho met his burden of introducing evidence to establish the amount of his loss with reasonable certainty. His evidence included calculations of the property's value in 1987. L & T attacked the credibility of this evidence during cross-examination of witnesses, but did not introduce any evidence of the property's value in 1993. Thus, even if the damages were to have been based on the property's 1993 value, there was no evidence upon which to base such calculation.[15] Consequently, L & T has no room to complain that the Superior Court abused its discretion by basing its calculation of damages on Camacho's 1987 figures.

## IV. Holdover Tenancy

With respect to Camacho's unlawful detainer claim, the Superior Court awarded Camacho $3,000 per month in damages from the time of the expiration of the lease agreement in June 1993 until L & T vacated the barracks in December 1993. The $3,000 amount was established by expert testimony as the fair market rental for the property. The Superior Court rejected L & T's contention that it should continue to pay the rent rather than damages.

---

[12] RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 12.2 cmt. a (1977).

The RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT supplies the law we apply in this case. *See* 7 CMC § 3401 (in the absence of written law or local customary law, the rules of the common law, as expressed in the Restatements of the Law, are the rules of decision in Commonwealth courts).

[13] RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 12.2(2) (1977).

[14] *Id.* § 12.2(3) (emphasis added).

[15] *See Mikol v. Vlahopoulos*, 340 P.2d 1000, 1001 (Ariz. 1959).

L & T asserts that the Superior Court erred in awarding damages because it was not an improper holdover tenant.[16] Rather, L & T continued to occupy the premises after Camacho gave it a notice to vacate, because L & T believed in good faith that it had properly exercised its option to renew. Not until the Superior Court determined that the option had not been exercised, and the lease expired in June 1993, did L & T know it had no legal right to remain on the premises. L & T complied with the court's order to vacate the premises, a process which took a reasonable period of two months. Under the circumstances, L & T contends, it should be held liable only for rent. We find no error.

 A lessee who improperly remains on the leased premises after termination of the lease is a holdover tenant.[17] The landlord may elect either to impose another lease term on a tenant improperly holding over, or to treat the holdover tenant as a trespasser and take action to recover possession of the property.[18]

 A landlord who, like Camacho, chooses to recover possession of the premises is entitled to compensation "for the use and occupation of the leased property during the holdover period at a rate based on the previous rental rate, or on the proven reasonable value independently established if that differs from the previous rental rate."[19] This rule "provides a standard restitution remedy. Since it lies outside any agreement by the parties, it is not limited by the terms of the lease. It simply requires the tenant to pay for what [the tenant] got during the holdover period."[20]

 The negotiated rental rate in the lease generally determines the rate at which the landlord is to be compensated for the holdover tenant's continued occupation and use of the premises.[21] However, either the tenant or the landlord may introduce evidence, as Camacho did, that independently establishes the reasonable value of the

---

[16] The trial court did not expressly find that L & T was an improper holdover tenant, but such a finding may be implied because it is a necessary precursor to an award of damages for unlawful detainer.

[17] RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 14.1 introductory note (1977).

[18] Id. at § 14.1, 14.4; Pima County v. Testin, 840 P.2d 293, 295 (Ariz. Ct. App. 1992).

[19] RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT, § 14.5 & reporter's note 2 (1977).

[20] Id.

[21] Id. at § 14.5 cmt. a.

use and occupation. This value may be more or less than the rental rate specified in the terminated lease.[22]

The record on appeal contains no evidence supporting L & T's contention that the option to renew the lease had been properly exercised. Based on the evidence, the Superior Court found that the notice to renew was given too late, the lease expired of its own terms, and L & T remained on the property against Camacho's will. Camacho then treated L & T as a holdover tenant and took action to recover the property. The Superior Court correctly held that L & T became an unlawful holdover tenant from the time that the lease expired.

## V. Attorney's Fees

 Camacho prevailed on all issues before the Superior Court and the court awarded him attorney's fees. L & T argues that the amount of the award should be reduced because the Superior Court erroneously included fees and costs associated with: (1) L & T's counterclaim; (2) the issue of waste, on which L & T should prevail; (3) Camacho's request that the status of the lease be determined; and (4) the issue of unlawful detainer, on which L & T should prevail. We find no error and affirm.

Under the relevant portion of the attorney's fees provision of the lease:

18. [L & T] shall pay all reasonable attorney's fees and costs on behalf of [Camacho] if (a) [Camacho] institutes litigation against [L & T] for a breach of the terms and conditions of [the] lease, and [Camacho] prevails, (b) [Camacho] institutes litigation against [L & T] for an unlawful detainer of the demised premises, and [Camacho] prevails, (c) [L & T] institutes litigation against [Camacho] for a breach of the terms and conditions of [the] lease, and [Camacho] is not at fault . . . . The reasonable attorney's fees and costs incurred by [Camacho] herein shall be paid by [L & T] whether litigation is prosecuted to judgment or not.

Lease Agreement ¶ 18 in Excerpts of Record at 12-13.

In his prayer for relief, Camacho requested, among other things, "[t]hat [L & T] be required to vacate said premises and the lease at issue herein be determined to be of no further force and effect," Supplemental Complaint and Summons at 4 in Excerpts of Record at 4, and

---

[22] Id.

"[t]hat [Camacho] receive damages for unlawful detainer." *Id.* We held above (see analysis section IV), that the Superior Court did not err in assessing damages for unlawful detainer. The determination that the lease ended in June 1993 was an inseparable part of the unlawful detainer action:

> Since unlawful detainer is an action to oust a tenant whose lease has expired or been terminated, it follows that plaintiff must show that defendant's lease has terminated. In this cause, that termination depended upon the terms of the contract of lease. . . . To determine therefore whether defendant was in unlawful detainer the court must determine the meaning and effect of the [lease provision], but that does not change the action from one in unlawful detainer. It is merely deciding a question the decision of which is necessary in making a determination as to whether defendant is in unlawful detainer.[23]

Therefore, Camacho was entitled, under paragraph eighteen, subsections *b* and *a*[24] of the lease, to attorney's fees for his unlawful detainer action and attendant request for a determination of the lease's status.

 With respect to the attorney's fees award based on L & T's counterclaim and Camacho's claim that L & T committed waste in violation of paragraph seventeen of the lease, we decline to reverse the Superior Court. L & T brought its counterclaim in the broader context of litigation instituted by Camacho for unlawful detainer. Camacho successfully defended against the counterclaim. We reversed the Superior Court on the merits of the cause of action based on waste, but the lease specifies that Camacho is entitled to attorney's fees if he "institutes litigation . . . and prevails." Prevailing in litigation differs from prevailing on a cause of action. Thus, a "prevailing party"

> may be the party prevailing in interest, and not necessarily the prevailing person. To be such does not depend upon the degree of success at different stages of the suit, but whether, at the

end of the suit, . . . the party who has made a claim against the other, has successfully maintained it.[25]

Camacho remains the prevailing party in this lawsuit and remains entitled to attorney's fees under the terms of the lease agreement.[26]

## CONCLUSION

We **AFFIRM** as to issues I, III, IV, and V. We **REVERSE** as to issue II, and **REMAND** for the Superior Court to enter a judgment consistent with this opinion.

---

[25] BLACK'S LAW DICTIONARY 1188 (6th ed. 1990).

[26] *See Szoboszlay v. Glessner*, 664 P.2d 1327, 1334-35 (Kan. 1983) ("Viewing the case in its entirety, it is without doubt the [plaintiff] . . . was the successful party. The [defendant] . . . was denied recovery in any form on her counterclaim . . . . The [plaintiff's] judgment was expressly affirmed, but was reduced by a small amount . . . . The [plaintiff] prevailed on the main issue presented and therefore was the successful party").

---

[23] *Brandley v. Lewis*, 92 P.2d 338, 339-40 (Utah 1939) (internal citation omitted).

[24] In paragraph seventeen of the lease, L & T covenanted to "peaceably and without legal process deliver up the possession of the premises in good condition." Paragraph eighteen *a* of the lease provides for the award of attorney's fees for litigation concerning the breach of such "terms and conditions" of the agreement.